## EMPIRE ABRASIVE EQUIPMENT CORPORATION, Appellant,

v.

## H. H. WATSON, INC. and Old Stone Bank.

### No. 77–1150.

United States Court of Appeals, Third Circuit.

Argued Oct. 7, 1977.

Decided Nov. 16, 1977.

---

* Of the Eastern District of New York, sitting by designation.

Allen S. Kellerman, Abrahams & Loewenstein, Philadelphia, Pa., for appellant.

John E. Quinn, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for Old Stone Bank.

Samuel E. Dennis, Barry E. Bressler, Meltzer & Schiffrin, Philadelphia, Pa., for H. H. Watson, Inc.

Before GIBBONS and WEIS, Circuit Judges, and WRIGHT,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from a dismissal of a diversity action against two non-resident, corporate defendants for lack of personal jurisdiction. The appellant is Empire Abrasive Equipment Corporation (Empire), a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. The appellees are H. H. Watson, Inc. (Watson), a Rhode Island business corporation with its principal place of business in East Providence, Rhode Island, and Old

---

* Sitting by designation.

Stone Bank (the bank), a Rhode Island banking corporation with its principal place of business in Providence, Rhode Island. Service of process was attempted pursuant to Fed.R.Civ.P. 4(e) and Pennsylvania's long-arm statute, Pa.Stat.Ann. tit. 42, § 8308 *et seq.* (Purdon). Since both defendants are foreign corporations, they are amendable to service of process under the Pennsylvania long-arm statute "to the fullest extent allowed under the Constitution of the United States." Pa.Stat.Ann. tit. 42, § 8309(b) (Purdon). *See Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 16–18, 323 A.2d 11, 13–14 (1974). Thus we must examine the facts disclosed by the pleadings on file to determine whether the Commonwealth of Pennsylvania could constitutionally exercise adjudicatory authority over either defendant with respect to the dispute in question.[1] We affirm the dismissal of the complaint against the bank, but reverse the dismissal as to Watson and remand for further proceedings respecting the latter.

## I. FACTS

On January 12, 1976, a representative of Watson in Rhode Island placed with Empire by a telephone call to Pennsylvania an order for eleven abrasive finishing cabinets for a total price of $29,876. These cabinets are products regularly manufactured by Empire and described in a mail-order catalog which Empire distributed. By letter dated January 13, 1976, Empire confirmed the terms of the order, but added a proviso that Watson secure payment by causing the issuance of an irrevocable letter of credit, payable at the bank in Rhode Island upon presentation either of Empire's invoice and shipping document or of a signed receipt from Watson acknowledging receipt of the merchandise. Immediately after sending the January 13, 1976 letter, Empire alleges that it alerted its vendor and took other

steps in preparation for filling the order. Thereafter Watson caused the bank to issue a letter of credit, which provided:

> Funds under this Letter of Credit are available to you at our International Department, against your draft on us at thirty (30) days date (see below), mentioning thereon our Credit No. 76017. Each such draft must be accompanied by your commercial invoice representing shipment of eleven (11) abrasive finishing cabinets and a receipt signed by a duly authorized agent of H. H. Watson, Inc., for the merchandise.

The complaint alleges that the letter of credit, dated January 26, 1976, was received by Empire "on or about" that date, a Monday. On January 29, 1976, a Thursday, it received from Watson a writing dated January 27, 1976:

> Please cancel immediately our purchase order #'s 5268 and/or 5298 dated January 27, 1976 for eleven . . . Cabinets.

This writing indicated that a copy went to the bank. On February 5, 1976, Empire received from the bank a letter dated January 30, 1976, requesting that its letter of credit be returned because the Watson purchase order had been cancelled. On February 25, 1976, Empire mailed to the bank an invoice for $15,335 for "cancellation charges" on the $29,876 Watson order. The bank replied by mail, declining payment because the $15,335 invoice was not the documentation specified in the letter of credit.

In this lawsuit which followed, Empire seeks damages from Watson for breach of the purchase contract and from the bank for failing to honor its letter of credit. Both defendants moved to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, each claiming that it was not amenable to Pennsylvania long-arm jurisdiction under the facts alleged.[2]

---

1. While we are bound, of course, by the highest Pennsylvania state court's interpretation of its own statutes, we are not bound by state judicial interpretations of the due process clause of the United States Constitution. Thus we are free to undertake an independent assessment of the phrase "to the fullest extent allowed under the Constitution of the United States."

2. Watson also brought motions to dismiss on the basis of Rules 12(b)(3) (improper venue), and 12(b)(6) (failure to state a claim upon

## II. THE BANK

█ Viewed in the light most favorable to Empire, the complaint alleges that the bank, an issuer in Rhode Island, contracted with a Rhode Island customer, Watson, to issue an irrevocable letter of credit under which a Pennsylvania beneficiary, Empire, could present drafts accompanied by specific documents at the issuer's place of business in Rhode Island; that a credit was established in Rhode Island in favor of the beneficiary when it was advised in Pennsylvania of the issuance of the letter of credit; and that the bank wrongfully cancelled the credit. *See* Pa.Stat.Ann. tit. 12A, §§ 5–103, 5–106, and 5–115 (Purdon 1970); R.I.Gen. Laws tit. 6A, §§ 5–103, 5–106, and 5–115 (1969). The question is whether on these facts Pennsylvania could, in compliance with due process of law, require the bank to litigate the propriety of its alleged cancellation of credit in the Pennsylvania courts.

In *Aldens, Inc. v. Packel*, 524 F.2d 38, 43 (3d Cir. 1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), this court observed:

> Since *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), it has been clear that the due process clause defines a rather low threshold of state interest sufficient to justify exercise of the state's sovereign decisional authority with respect to a given transaction.

But while the threshold is low, it is nonetheless real.

> *International Shoe* [*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)], posited twin limitations upon the scope of state judicial power. First, out of respect for values of federalism, the due process clause was held to forbid a state to exercise its adjudicatory authority in a manner that would encroach upon the sovereignty of a sister state. A state must have some palpable interest—rationally connected with public policy—in adjudicating a dis-

pute within its borders for jurisdiction to be lawfully acquired. The most apparent interest a state has in applying its judicial power is in regulating the conduct of persons within its territory. But state interests sufficient under the due process clause to sustain exercises of judicial jurisdiction may take many other forms as well, and whenever one or more of these factors is present, the forum's interest in allowing suit to be brought there may be adequate to satisfy the demands of federalism. Although some other sovereign state may have a superior interest in having the controversy finally adjudged in its courts, our system of federalism has recognized that such conflicts between states will often arise, and has concluded that as long as the forum's interest in opening its courts to the litigants is of due process dimensions, the sovereign rights of a sister state are not unconstitutionally abridged.

> The second jurisdictional limitation interposed by the due process clause focuses upon the parties and the burdens associated with litigating in a particular forum. This limitation upon judicial power prevents a state of a plaintiff's choosing from coercing defense of a suit in a forum which, because of its remoteness from defendant's residence and from witnesses and proof, would be fundamentally unfair. This limitation is bound up in notions of fair play and substantial justice, and not at all in sovereignty.

> These two limitations interact conjunctively. Thus a state may exercise its jurisdiction in a manner consistent with values of federalism, but if that exercise would nevertheless be fundamentally unfair to the defendant, the power is void. Similarly, it may not be unfair to subject a defendant to suit in a particular state, but if that state lacks the requisite contacts with the parties or the subject matter, its assumption of jurisdiction would impermissibly intrude upon another sov-

which relief can be granted). Similarly, the bank brought an additional motion predicated on Rule 12(b)(6). Since these motions were not considered by the District Court in its decision below, we need not determine the merits of any of them.

ereign's right to have its courts adjudicate disputes of interest to it.

*Jonnet v. Dollar Sav. Bank of New York*, 530 F.2d 1123, 1140 (3d Cir. 1976) (Gibbons, J., concurring).[3]

In the instant case, subjecting the bank to Pennsylvania's jurisdiction would not transgress the first of these two due process limitations. While it is probably true that Rhode Island has a more substantial sovereign interest in the resolution of the dispute, it cannot be said that Pennsylvania's interest is so insubstantial that its exercise of decisional authority would impermissibly intrude on Rhode Island's right to have its courts adjudicate. Pennsylvania is the corporate residence of the plaintiff beneficiary, and the letter of credit was issued in connection with the sale of goods by that Pennsylvania seller. These contacts establish some Pennsylvania sovereign interest.

■ But there remains the issue of the unfairness of compelling the foreign defendant to defend a suit brought in Pennsylvania. Absent disparity in bargaining power, in a dispute growing out of a commercial contractual undertaking, that issue can best be decided, we think, by reference to the expectations of the parties to the transaction.[4] We must examine not only what was allegedly undertaken but also the alternative courses of conduct which were rejected and which might have suggested a different balance of fairness. The Pennsylvania seller in this instance could have asked for a letter of credit from a Pennsylvania bank, but did not. It could have asked that the issuer's letter of credit be confirmed by a Pennsylvania bank, *see* Pa. Stat.Ann. tit. 12A, §§ 5–103(1)(f) & 5–107(2); R.I.Gen.Laws tit. 6A, §§ 5–103(1)(f) & 5–107(2), but did not. Instead, it specifically requested a letter of credit from a Rhode Island bank, on which it could present drafts payable in Rhode Island. Empire had no direct dealings with the

bank with respect to the issuance of the letter of credit, in Pennsylvania or elsewhere. The bank did nothing in Pennsylvania. It in no way invoked the protection of Pennsylvania law. If there is a cause of action against the bank, that cause of action arises out of the bank's activities in Rhode Island. It can hardly be said that in these circumstances the issuer or the beneficiary contemplated the resolution of any disputes between them anywhere but in Rhode Island.

We do not think that by issuing a letter of credit for a Rhode Island customer, calling for its performance in Rhode Island, the bank can be said to have subjected itself to the adjudicatory authority of Pennsylvania with respect to its obligations under the letter of credit solely because the beneficiary was a Pennsylvania corporate resident. We agree with the District Court that subjecting the bank to the jurisdiction of a Pennsylvania forum would offend traditional notions of fair play and substantial justice.

### III. WATSON

■ The District Court arrived at the same conclusion with respect to Watson. The court reasoned that it would be unfair to subject to the jurisdiction of a Pennsylvania forum a non-resident by virtue of a single order of a mail-order catalog item.

In Watson's case, as in the bank's, it is clear that Pennsylvania's interest in its corporate resident seller of goods suffices to justify the exercise of adjudicatory authority to the exclusion of other sovereignties, provided such exercise is not unfair to the prospective defendant. We are inclined to agree with the District Court that a state which permitted a corporate seller to circulate mail-order catalogs to distant states could not, in conformity with due process, insist on dragooning single customers on

---

3. *See also Shaffer v. Heitner*, 433 U.S. 186, 201–216, 97 S.Ct. 2569, 2579–2587, 53 L.Ed.2d 683, 697–706 (1977).

4. *Cf. Central Contracting Co. v. Maryland Cas. Co.*, 367 F.2d 341, 344–45 (3d Cir. 1966) (up-

holding contractual provision specifying forum for litigating disputes "so long as there is no proof that its provisions will put one of the parties to an unreasonable disadvantage and thereby subvert the interests of justice").

mail-order transactions from distant places. The state's interest in the economic health of its resident mail-order sellers would not overcome the manifest unfairness to such defendants. But here Empire alleges that there were prior dealings between it and Watson. Moreover, the order was not for typical mail-order merchandise, but for high-priced industrial equipment for the supply of which, according to the complaint, the seller had to enter into contracts with other vendors. And unlike the bank, Watson initiated the dealings between the parties. Finally, and we think conclusively for purposes of our disposition, Empire in opposition to Watson's motions, requested that the court refrain from ruling on it until Empire had discovery.[5] In view of Empire's allegations respecting prior dealings, the nature of the product, the need for subcontracting, and the initiation of negotiations by Watson, we think that by ruling on Watson's Rule 12(b)(2) motion before Empire had the opportunity for extensive discovery, the District Court ruled prematurely. If more than an isolated mail-order transaction is involved, litigation in Pennsylvania may not be unfair to Watson.

The judgment dismissing the complaint for lack of personal jurisdiction over the bank will be affirmed. The judgment dismissing the complaint for lack of jurisdiction over Watson will be reversed and the case remanded for further proceedings, including the reconsideration of Watson's motion to dismiss on jurisdictional grounds after the completion of discovery addressed to that issue.

---

bear on the transactions resulting in the issuance of the letter of credit.