**ELECTRO–CATHETER CORPORATION,**
Plaintiff,

v.

**SURGICAL SPECIALTIES INSTRU-MENT COMPANY, INC.,**
Defendant.

**Civ. A. No. 84–928.**

United States District Court,
D. New Jersey.

June 5, 1984.

Bressler, Plotkin & Ross by Lawrence D. Ross, Morristown, N.J., for plaintiff.

Eugene V. Lipkowitz, Wyckoff, N.J., for defendant.

DEBEVOISE, District Judge.

### I. *Preliminary Statement*

Plaintiff, Electro-Catheter Corporation, a New Jersey corporation with its principal place of business in Rahway, New Jersey, instituted this suit against defendant, Surgical Specialties Instrument Company, Inc., a Maryland corporation with its principal place of business in Crofton, Maryland, in the Superior Court of New Jersey. Thereafter, on March 8, 1984, defendant removed the case to federal court, basing jurisdiction upon diversity of citizenship under 28 U.S.C. § 1331. Presently before the court are (1) plaintiff's motion for partial summary judgment on the Second Count of the Amended Complaint in the amount of $43,-330.53, and (2) defendant's motion for dismissal of the suit for lack of *in personam* jurisdiction and improper service of process.

### II. *Factual and Procedural History*

Plaintiff is engaged in the business of developing, manufacturing and marketing catheters, electronic instruments and related products for use in the diagnosis and treatment of medical disorders. These products are manufactured by plaintiff in New Jersey. For the past 14 years, plaintiff's products were distributed by defendant in the territory covering the District of Columbia, Maryland, North Carolina, South Carolina, Virginia, West Virginia and, for a time, Pennsylvania.

Defendant purchased plaintiff's products by placing orders over the telephone or by mail. Plaintiff would then choose the method of shipment and deliver the goods to the defendant at standard distributor prices. Each shipment of goods from plaintiff to defendant was accompanied by an invoice showing the goods delivered and

the price therefor. In recent years, the volume of defendant's purchases in New Jersey from plaintiff has grown from $438,000 in 1981 and $515,000 in 1982 to almost $600,000 in 1983.

In addition to defendant's contacts with plaintiff by mail or telephone, the President and other representatives of defendant have visited plaintiff's offices in New Jersey to conduct business. In his certification, the President of defendant states that he visited the plaintiff's offices approximately 25 times. Other representatives of defendant have spent at least a dozen working days at plaintiff's offices since 1978.

In the latter part of 1983, plaintiff concluded that defendant was not using its best efforts to sell plaintiff's products. Furthermore, defendant had failed to account to plaintiff since December 1982 for certain computers which plaintiff had supplied to defendant for loan to hospitals under contract to purchase plaintiff's catheters. Consequently, on January 19, 1984 plaintiff informed defendant by letter of its decision to terminate the relationship with defendant and to transact business through a different distributor named Cardio-Medical Products, Inc., located in New Jersey.

On February 7, 1984, plaintiff commenced a suit in the Superior Court of New Jersey by filing a Verified Complaint seeking both a declaration that there is no contractual relationship between the plaintiff and defendant and an injunction restraining defendant from threatening other distributors and customers of plaintiff's products with suit or other legal action if such entities do business with plaintiff. The court then issued an Order to Show Cause on plaintiff's application for temporary injunctive relief. The Order to Show Cause provided that the order be served in lieu of a summons upon the defendant, either by certified mail or personally. The Order to Show Cause and the Complaint were served upon defendant both by certi-

fied mail and personally. *See* Affidavits of Martin and Anselmi.

On February 16, 1984, defendant filed with the state court a motion to dismiss the Complaint for lack of personal jurisdiction on grounds that defendant had insufficient contacts with New Jersey. Then, on March 8, 1984, defendant removed this case to federal court. Plaintiff concedes that the action is removable since there is diversity of citizenship and the amount in controversy exceeds $10,000.

On March 15, 1984, plaintiff filed an Amended Complaint seeking to recover from defendant the cost of goods sold and delivered to defendant between December 15, 1983 and February 19, 1984 as well as the value of certain computers loaned to defendant by plaintiff. Plaintiff now moves for partial summary judgment on the Second Count of the Amended Complaint seeking recovery for goods sold and delivered to defendant. Defendant's motion for dismissal of the Complaint on grounds that this court lacks personal jurisdiction and that service of process was ineffective is also pending. Each motion will be addressed separately below.

### III. *Conclusions of Law*

**A.** *Personal Jurisdiction over Defendant*

■ Rule 4(e) of the Federal Rules of Civil Procedure authorizes a district court to effect service of process upon, and thereby to assert jurisdiction over, nonresident defendants in the manner and to the extent allowed under the law of the forum state. The applicable statute in this case is New Jersey's "long-arm" statute, N.J. Court Rule 4:4–4(c)(1), which provides for personal jurisdiction over nonresident corporations "to the uttermost limits provided by the United States Constitution." *Avdel Corporation v. Mecure*, 58 N.J. 264, 268, 277 A.2d 207 (1971).[1] Under this statute, limitations on the exercise of personal juris-

---

**1.** Defendant's constitutional challenge to the N.J. long arm statute, N.J.Civ.Ct.R. 4:4–4(c)(1), on grounds that it violates both the commerce clause and the due process clause of the Fourteenth Amendment is wholly without merit. By

definition, the reach of this statute is limited by constitutional standards. It is therefore a contradiction in terms for the statute to be "unconstitutional".

diction over nonresident defendants in diversity cases are coextensive with those of the Due Process Clause of the Fourteenth Amendment. *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981). Thus, in the present case, the amenability to suit of the nonresident defendant must be evaluated by Fourteenth Amendment standards.

■ The basic criteria for evaluating whether the exercise of jurisdiction comports with due process are set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *International Shoe* held that due process is satisfied when a nonresident defendant has certain minimal contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158. In determining whether these due process considerations permit the exercise of *in personam* jurisdiction, the Third Circuit has distinguished between "personal jurisdiction in cases where the defendant's forum-related activities do not give rise to the claim, and personal jurisdiction in cases where the claim arises out of a specific forum-related act or series of acts." *Paolino v. Channel Home Centers*, 668 F.2d 721, 724 (3d Cir. 1981). *See Horne v. Adolph Coors Co.*, 684 F.2d 255, 258 (3d Cir.1982); *Schwilm v. Holbrook*, 661 F.2d 12, 14 (3d Cir.1981); *Compagnie des Bauxites de Guinea v. Ins. Co. of North America*, 651 F.2d 877, 890 (3d Cir.1981), *aff'd sub nom. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). When the claim at issue is not premised upon a nonresident defendant's activities within a forum state, the exercise of personal jurisdiction is reasonable and fair only if the contacts between the state and the defendant are substantial, continuous and systematic. *Reliance Steel Products Co. v. Watson, Ess, Marshall, & Enggas*, 675 F.2d 587, 588 (3d Cir.1982). A less stringent test is required to support personal jurisdiction when the cause of action is related to or arises from a nonresident defendant's activities within a state. *Compagnie des Bauxites de Guinee v. L'Union*, 723 F.2d 357, 362 (3d Cir.1983); *Dickson v. Hertz Corp.*, 559 F.Supp. 1169, 1173 (D.V.I.1983); *Infomed v. Healthcare of Louisville, Inc.*, 526 F.Supp. 1287, 1289 (D.N.J.), *aff'd*, 673 F.2d 1299 (3d Cir.1981) (unpublished judgment order). Rather than focus on the contacts between the defendant and the forum state, when the claim is related to defendant's activities within the state, the court must inquire whether the relationship of the transaction at issue to the forum justifies the forum state's assertion of jurisdiction over the defendant. *Paolino v. Channel Home Centers, supra*, 668 F.2d at 724 ("the focus ... must be upon the relationship of the transaction to the forum"); *Reliance Steel Products v. Watson, Ess, Marshall, & Enggas, supra*, 675 F.2d at 588 ("the focus must be on the relationship of the transaction giving rise to the law suit to the forum where the plaintiff seeks to litigate it."); *Western Union Telegraph Co. v. T.S.I., Ltd.*, 545 F.Supp. 329, 332 (D.N.J.1982) ("There must be contacts between the transaction at issue and the forum state.")

In appraising the fairness of exercising jurisdiction over a nonresident defendant which has contacts with the forum arising out of the transactions at issue in the suit, the Supreme Court has provided certain guidelines. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), involved a Texas insurance company which delivered an insurance policy to a California resident and received premiums mailed from California. Even though the company had no contacts with California other than correspondence by mail, the court found that these facts demonstrated a substantial connection between the policy sued upon and California. In view of this substantial connection, coupled with the strong state policy interest in providing California residents with a convenient forum for recovering from insurers, the court held that jurisdiction could properly be asserted by a California court over the nonresident company. *Id.* at 223, 78 S.Ct. at 201.

In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), a case decided during the same term as *McGee,* the Supreme Court refined the meaning of "substantial connection" between the contract sued upon and the forum. The Trust Agreement at issue in *Hanson* was executed in Delaware by a Trust Company incorporated in that State and by a Settlor domiciled in Pennsylvania. The court noted that neither the agreement nor the Trustee had any connection with Florida, the forum state, where the Settlor subsequently became domiciled. Prior to her death in Florida, the Settlor executed powers of appointment under the Trust Agreement. The court held that this act on the part of the Settlor was not sufficiently connected with the Trust Agreement to confer personal jurisdiction on the Florida courts over the nonresident Trustee. *Id.* at 253, 78 S.Ct. at 1240. The court explained,

> the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

*Id.*

■ The mere fact that certain acts of a nonresident may generate repercussions within a particular state does not justify bringing the nonresident before the courts of that state. The Supreme Court has made clear that the nonresident must reasonably be able to anticipate being haled before a forum court. Thus, in *Shaffer v. Heitner,* 433 U.S. 186, 215–16, 97 S.Ct. 2569, 2585–86, 53 L.Ed.2d 683 (1977), the court held that Delaware courts lacked *in rem* jurisdiction over nonresident defendants who reasonably did not expect to be subject to the jurisdiction of those courts merely upon acceptance of director and officer positions in a Delaware corporation and upon acceptance of the corporation's stock dividends. *Accord Kulko v. Califor-*

*nia Superior Court,* 436 U.S. 84, 94–98, 98 S.Ct. 1690, 1698–1700, 56 L.Ed.2d 132 (1978) (since nonresident father did not expect to be subject to child support suit in California, where mother unilaterally decided to establish domicile after divorce, California lacked personal jurisdiction over him); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (in products liability suit, New York automobile retailer and wholesale distributor were not subject to personal jurisdiction of Oklahoma courts merely because of fortuitous circumstance that a single automobile sold by defendants in New York to New York residents happened to suffer an accident while passing through Oklahoma). *Cf. Keeton v. Hustler Magazine, Inc.,* — U.S. —, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (in libel suit brought by nonresident in New Hampshire, where the nonresident publisher purposefully conducted a limited part of its nationwide business by regularly selling copies of magazine there, New Hampshire courts properly exercised jurisdiction over publisher on claim related to those business activities).

■ Once a defendant properly raises a jurisdictional defense, the plaintiff bears the burden of demonstrating sufficient contacts with the forum state to support personal jurisdiction. *Compagnie des Bauxites de Guinee v. L'Union, supra,* 723 F.2d at 362 (3d Cir.1983). *Cf. Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61 at 66 (3d Cir.1984) (plaintiff failed to sustain burden of proving sufficient facts to give court *in personam* jurisdiction over nonresident defendant which entered contract to pay plaintiff commissions on sales of vacation property made through the plaintiff's promotional efforts).

The question presented by the facts in the case at bar is whether the purposeful activities of the nonresident defendant in purchasing goods from the resident plaintiff constitute sufficient contacts with New Jersey to render the assertion of jurisdiction over the defendant fair and reasonable for the limited purpose of this action. The

contacts between defendant's activities, which form the basis for the instant claims, and New Jersey may be summarized as follows: (1) during a period of 14 years, defendant purchased sophisticated medical equipment from plaintiff by placing orders over the telephone and by mail; (2) the goods were manufactured by plaintiff in New Jersey and delivered F.O.B. to defendant in Maryland; (3) in recent years, the volume of purchases by defendant from plaintiff has been more than half a million dollars; (4) over the course of their business relationship, the President of defendant visited plaintiff's offices to discuss sales and other matters approximately 25 times; (5) visits to plaintiff's offices by other representatives of defendant have amounted to about twelve working days since 1978; (6) defendant submits no affidavit disputing the allegation in the complaint that, upon plaintiff's termination of defendant as distributor, defendant told another New Jersey distributor, who sought to take over sales in the territory previously served by defendant, that defendant would sue such distributor for injunctive relief seeking to bar the distributor from selling plaintiff's products in the territory. *See* Amended Complaint, ¶ 9.

The Supreme Court in *Rosenberg Brothers & Co. v. Curtis Brown Co.,* 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923), squarely addressed the issue of whether purchases of goods and visits to a seller in connection with such purchases by a nonresident corporation are sufficient to establish "presence" within the resident seller's state for jurisdictional purposes. The nonresident purchaser in *Rosenberg* was a small retail dealer in men's clothing operating in Oklahoma. Its only contact with New York, the forum State, was that it purchased at regular intervals, by mail or by visits, a large part of its inventory. The court held that, although the cause of action arose in New York, the nonresident corporation was not present there to confer jurisdiction on that State.

Since *Rosenberg* antedates *International Shoe* and the subsequent expansion of the bases for exercise of personal jurisdiction, it has been considered doubtful precedent. Until recently, the Supreme Court denied certiorari in each case presenting the issue whether *Rosenberg* had continued viability. *See Mouzavires v. Baxter,* 434 A.2d 988 (D.C.App.1981), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982); *Chelsea House Publishers v. Nicholstone Book Bindery, Inc.,* 621 S.W.2d 560 (Tenn.S.C.1981), *cert. denied,* 455 U.S. 994, 102 S.Ct. 1623, 71 L.Ed.2d 856 (1982); *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980); *Iowa Electric Light and Power Company v. Atlas Corp.,* 603 F.2d 1301 (8th Cir.1979), *cert. denied,* 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). The decisions to deny certiorari prompted routine dissents by Justice White, who explained,

> The question of personal jurisdiction over a nonresident corporate defendant based on contractual dealings with a resident plaintiff has deeply divided the federal and state courts. [Cites omitted]. The question at issue is one of considerable importance to contractual dealings between purchasers and sellers located in different states. The disarray among federal and state courts noted above may well have a disruptive effect on commercial relations in which certainty of result is a prime objective. That disarray also strongly suggests that prior decisions of this court offer no clear guidance on the question.

*Lakeside Bridge & Steel Co. v. Mountain State Construction Co., supra,* 445 U.S. at 907–911, 100 S.Ct. at 1087–1090.

The Supreme Court clarified the law in this area to a limited extent in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). *Helicopteros* involved a wrongful death action arising out of a helicopter crash in Peru brought in Texas by Texas residents against a Colombian corporation. The defendant's contacts with Texas consisted of sending its Chief Executive Officer to Texas for a contract negotiation session; accepting checks drawn on a Texas bank; purchasing helicopters, equipment and training services from a Texas compa-

ny for substantial sums; and sending personnel to Texas for training. Noting that the claims against the defendant did not arise out of and were not related to defendant's activities in Texas, the court concluded, with Justice Brennan dissenting, that defendant's activities in Texas did not constitute continuous and systematic general business contacts. The court then stated:

> In accordance with *Rosenberg,* we hold that mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.

*Id.* at —, 104 S.Ct. at 1874.

The Supreme Court declined in *Helicopteros* to address the question of whether purchases from and visits to a forum are sufficient to support specific jurisdiction over a claim arising from those transactions, explaining:

> Arguably . . . *Rosenberg* also stands for the proposition that mere purchases are not a sufficient basis for either general or specific jurisdiction. Because the case before us is one in which there has been an assertion of general jurisdiction over a foreign defendant, we need not decide the continuing validity of *Rosenberg* with respect to an assertion of specific jurisdiction, *i.e.,* where the cause of action arises out of or relates to the purchases by the defendant in the forum state.

*Id.* at n. 12. Therefore, the decision in *Helicopteros* is not dispositive of cases such as the one at bar, where the claims asserted arise out of or relate to a nonresident defendant's contacts with the state. *See id.* at —, n. 1, 104 S.Ct. at 1876, n. 1 (Justice Brennan dissenting).

The Third Circuit dealt with the issue of jurisdiction over nonresident purchasers of goods from resident sellers in *Empire Abrasive Equipment v. H.H. Watson, Inc.,* 567 F.2d 554 (3d Cir.1977). There, a Rhode Island corporation placed a purchase order amounting to $29,876 over the telephone to a Pennsylvania company. Pursuant to the seller's request, the customer obtained a letter of credit from a Rhode Island bank. After the seller took steps to fill the order, it received notice that the customer was canceling the order. The Bank then declined payment on the letter of credit. Upon commencement of a suit in Pennsylvania by the seller against the customer and the Bank for breach of the purchase order and failure to honor the letter of credit, respectively, the district court dismissed both defendants for lack of personal jurisdiction. The Third Circuit agreed that subjecting the Bank to the jurisdiction of a Pennsylvania forum would offend traditional notions of fair play and substantial justice since the Bank had no direct dealing with the seller and had not invoked the protection of Pennsylvania law. With respect to the customer, however, the Third Circuit reversed the district court's judgment. The court reasoned that, "it is clear that Pennsylvania's interest in its corporate resident seller of goods suffices to justify the exercise of adjudicatory authority to the exclusion of other sovereignties; provided such exercise is not unfair to the prospective defendant." *Id.* at 558. In evaluating the fairness to the defendant of subjecting it to the jurisdiction of the Pennsylvania courts the court stated, "[w]e are inclined to agree with the District Court that a state which permitted a corporate seller to circulate mail-order catalogs to distant states could not, in conformity with due process, insist on dragooning single customers on mail-order transactions from distant places." *Id.* at 558–59. In view of the alleged prior dealings, the nature of the product involved, the need for subcontracting, and the initiation of negotiations by the customer, however, the court found that, if further discovery supported these allegations, the exercise of jurisdiction over the customer would not be unfair. The court concluded that, "[i]f more than an isolated mail-order transaction is involved, litigation in Pennsylvania may not be unfair to [the customer]." *Id.* at 559.[2] *See*

---

**2.** The Supreme Court's subsequent decision in *World-Wide Volkswagen Corp., supra,* does not affect the analysis set forth in *Empire Abrasive.*

*World-Wide Volkswagen* reaffirmed that the minimum contacts requirement operates "to protect the defendant against the burdens of

also *W.A. Kraft Corp. v. Terrace on Park, Inc.*, 337 F.Supp. 206 (D.N.J.1972) (personal jurisdiction fairly exercised over nonresident corporation, which solicited bid for two generators from New Jersey seller and then sent purchase order for generators, in breach of contract action arising from defendant's default on payments due).

Consistent with the ruling in *Empire Abrasive Equipment, supra,* the district courts within the Third Circuit have identified the following four factors as relevant in determining the amenability to suit of a nonresident defendant that purchases goods from a resident: (1) the character of the pre-contract negotiations; (2) the location of these negotiations; (3) the terms of the sales agreement; and (4) the type of goods sold. The court in *Strick Corp. v. A.J.F. Warehouse Distrib., Inc.*, 532 F.Supp. 951, (E.D.Pa.1982), observed that:

> These factors are significant in gauging both the weight that should attach to a defendant's "act" of entering a contract with a resident plaintiff and the extent to which a defendant may have been able reasonably to foresee that his breach of that contract would subject him to suit in the forum. Careful appraisal of these factors will help to place a particular defendant at the appropriate point along a scale running from virtually no forum contacts except for the passive purchase of relatively simple items to more explicit forum contacts in which the sale of complex industrial equipment is initiated by the defendant.

The nonresident customer in *Strick Corp., supra,* purchased a large number of trailer trucks from a Pennsylvania resident in a series of transactions from 1973 to 1980. As part of this continuing business relationship, representatives of the customer visited the seller's offices and communicated with the seller by telephone and mail. Upon an alleged breach of the contract by the customer, the seller commenced suit in Pennsylvania. Although the court acknowledged that the customer's contacts with the forum were insufficient to support general jurisdiction for claims unrelated to the customer's activities in the state, the contacts between the transactions at issue and the forum rendered the customer subject to the jurisdiction of Pennsylvania for claims arising out of those transactions. *Id.* at 956, 960. The court particularly noted that rather than act as a passive buyer of goods, the customer initiated the transaction to purchase a large number of relatively expensive and complex industrial truck trailers and that, in furtherance of this deal, the customer visited the seller's office. Consequently, the customer "had fair notice that it was dealing with and had entered a binding obligation with a Pennsylvania company.... Further, [the customer] could reasonably foresee that its breach of this contract would have an impact on Pennsylvania commerce and inflict some degree of economic harm in the state." *Id.* at 960.

Similarly, *Kyle v. Continental Capitol Corp.*, 575 F.Supp. 616 (E.D.Pa.1983), involved a breach of contract action instituted by a forum resident against a Panama-based corporation. The court found that an agent of defendant visited the plaintiff's offices in Pennsylvania to negotiate a contract whereby the defendant agreed to divide brokerage fees with the plaintiff. These fees were earned through the parties' efforts to obtain a loan for plaintiff's client. In addition, the defendant executed the contract in Pennsylvania and monitored the arrangements by means of the mail and telephone calls to Pennsylvania. In light of the fact that the claim arose from de-

---

litigating in a distant or inconvenient forum [and] ... to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." 444 U.S. at 292, 100 S.Ct. at 564. When a court compels a nonresident defendant to litigate a claim that fortuitously arose in a particular forum with which the defendant has no other contact, the court overreaches and unfairness to the defendant results. The court in *Empire Abrasive* addressed both prongs of the minimum contacts requirement by examining the State's interest in providing a forum for its resident sellers and by noting that the defendant reasonably should have anticipated being subject to the forum's jurisdiction based on its purposeful business conduct there.

fendant's activities within the forum state, the court held that the defendant's contacts were sufficient to support personal jurisdiction. *Id.* at 621. *Accord Stevens Yachts of Annapolis v. Am. Yacht Charters,* 571 F.Supp. 467, 469 (E.D.Pa.1983) (in breach of contract suit brought by Maryland corporation against Virgin Islands and Texas corporations, court transferred suit to Maryland since, by entering a 2.4 million dollar contract with Maryland corporation, both defendants could foresee an economic impact on the State of Maryland and Maryland had a "clear sovereign interest in protecting a 2.4 million dollar contract with a corporation that has its principal place of business in Maryland" so that defendants had sufficient contacts with Maryland for that state to have personal jurisdiction).

District courts in New Jersey have also extended personal jurisdiction over commercial nonresident purchasers in suits arising from their business transactions in the state. *Western Union Telegraph v. T.S.I., Ltd., supra* (in breach of contract suit, exercise of jurisdiction over nonresident corporation that visited New Jersey to negotiate purchase of communications satellite and communicated by mail and telephone, was fair and reasonable); *Alchemie Intern. Inc. v. Metal World, Inc.,* 523 F.Supp. 1039 (D.N.J.1981) (in breach of contract suit, jurisdiction over nonresident defendant was properly exercised where there was significant mail and telephone contacts with resident seller after defendant solicited contract, even though defendant did not visit the forum).

In those cases where courts have declined to extend jurisdiction over a commercial nonresident purchaser, the resident seller has initiated the business relationship, or the defendant has done no more than place orders within the forum state, accepting the seller's terms and prices, or the essential events of the contract, such as negotiations, execution, and performance, have occurred outside the forum. *See, e.g., Freedom Forge Corp. v. Jersey Forging Works, Inc.,* 549 F.Supp. 99, 101 (M.D.Pa. 1982) (Pennsylvania court did not have personal jurisdiction over New Jersey defendant, which submitted six purchase orders by mail over nine month period to Pennsylvania seller, in light of fact that the seller initiated the business relationship and negotiated the purchases in New Jersey, and the New Jersey buyer never visited the seller's offices in Pennsylvania); *Baron & Company, Inc. v. Bank of New Jersey,* 497 F.Supp. 534, 538–39 (E.D.Pa.1980) (Pennsylvania court without jurisdiction over New Jersey defendant when defendant's sole contacts with the forum were correspondence and insignificant number of telephone calls and when the contract at issue was negotiated and executed in New Jersey, where the subject matter of the contract was located); *Reliance Steel Products Co. v. Watson, Ess, Marshall, & Enggas, supra,* 675 F.2d at 589 (plaintiff resident's initiation of business relationship with nonresident defendant by placing a telephone call from forum to defendant in Missouri is unilateral activity and does not establish significant contact between forum and defendant); *Infomed v. Healthcare of Louisville, Inc., supra,* 526 F.Supp. at 1288 (New Jersey court without jurisdiction over nonresident defendant, which purchased computerized information system from resident seller after seller initiated the business relationship, and which visited plaintiff's offices at seller's request, but which otherwise had no other contacts with forum).

The United States Supreme Court has not yet decided whether the mere purchase of goods in a forum state by an out-of-state commercial buyer is sufficient to confer *in personam* jurisdiction over the buyer in an action arising out of the transaction. A reasonable approach, applying the criteria set forth by the Supreme Court and the Third Circuit, might be to find that jurisdiction does not exist where the purchases are few in number and sporadic in nature. By contrast, jurisdiction may be found to exist where the purchases are frequent in number, regular in nature and indicative of a continuing business relationship that also necessitates visits to the forum. In the latter situation, the out-of-state buyer could reasonably anticipate being subject to the jurisdiction of the forum for claims

related to or arising from its substantial and continuing business activities there. Such an approach would be consistent with most, but not all, of the cases discussed above, and would lead to a finding of *in personam* jurisdiction in the case at bar.

 While, in isolation, telephone and mail communications may not establish a substantial connection between a nonresident and a forum, when these communications form an integral part of an ongoing business relationship, such contacts are relevant in assessing the nature and extent of defendant's conduct within a forum. Otherwise, those businesses that can conduct extensive commercial activity in other jurisdictions primarily by telephone or through the mails would tend to be immunized from suit by those with whom they do business in any but their home jurisdictions. *Mississippi Interstate Exp. Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1010 (5th Cir.1982). In the present case, defendant acted as a distributor of plaintiff's products. Consequently, defendant's mail and telephone communications with plaintiff were frequent and generated substantial economic benefit to defendant. The essential nature of defendant's distributor business depended to an important degree on receiving adequate supplies of plaintiff's products. This fact renders the extensive mail and telephone communications between New Jersey and the defendant significant. Secondly, although no proof has been offered by either party as to whether the plaintiff or the defendant initiated the relationship between them, the President and other representatives of the defendant have traveled to New Jersey to discuss the continuation of and other matters related to the distributorship arrangement with plaintiff on numerous occasions. Thirdly, defendant's business dealings with plaintiff are not limited to an isolated contract but rather these dealings have been continuous over a period of fourteen years. These considerations show that defendant has purposefully chosen to conduct business with a New Jersey resident and has sought to continue this relationship, from which it derived substantial economic benefit. By so doing, defendant "purposefully availed" itself of the privilege of conducting its business activities within New Jersey. These activities have not been merely unilateral on the part of the plaintiff in manufacturing the goods necessary to fill defendant's purchase orders. The defendant's visits to the forum, the extensive mail and telephone communications between the defendant and the forum, and the nature of defendant's distributorship relationship with plaintiff indicate that this defendant was no mere purchaser. Indeed the business relationship with the New Jersey plaintiff was pursued by defendant. Thus, the contacts with New Jersey were established by both parties, not just the plaintiff. Consequently, I conclude that defendant could reasonably have anticipated being subject to the jurisdiction of the New Jersey courts for claims arising out of its business activities in New Jersey. Defendant's motion to dismiss for lack of personal jurisdiction is therefore denied.

### B. *Effectiveness of Service*

 In order for a court to hear an *in personam* action against a nonresident defendant, the defendant must be brought into court by proper service and notice. Defendant asserts that this court is without jurisdiction since the method of service employed by plaintiff did not comply with the requirements of N.J.Civ.Prac.R. 4:4–4(c)(1). Specifically, this rule prescribes the method of serving a summons upon a foreign corporation.

Plaintiff argues that this rule is not applicable to the instant case. Upon the filing of plaintiff's complaint seeking injunctive relief, the Superior Court of New Jersey issued an order to show cause pursuant to N.J.Civ.Prac.R. 4:52–1(a) specifying that service was to be effected "by certified mail, return receipt requested, or personally or otherwise in accordance with the rules of court." Defendant was served both by certified mail and personally in full compliance with the order to show cause. In cases commenced by way of a complaint and an order to show cause, the order to show cause constitutes process. *See* comment 1, Civ.Prac.R. 4:52–1. Thus, plaintiff

contends that it was not obliged to comply with the requirements of N.J.Civ.Prac.R. 4:4–4(c)(1).

▇ Plaintiff's contention is incorrect. In order to assert personal jurisdiction under New Jersey's long-arm statute, N.J. Civ.Prac.R. 4:4–4(c), plaintiff must satisfy the requirements of this rule. In this case, plaintiff personally served a copy of the complaint for injunctive relief on defendant at its principal place of business. This method of service complies with the New Jersey long-arm statute. Therefore, defendant's motion to dismiss on grounds of ineffective service is denied.

## C. Partial Summary Judgment on Second Count of Amended Complaint

Plaintiff seeks summary judgment on the Second Count of the Amended Complaint to recover the amount of $43,330.53, which defendant allegedly owes for catheters sold and delivered by plaintiff from December 15, 1983 through February 9, 1984.[3] In support of this motion, plaintiff submits the relevant unpaid invoices and the certification of John Ternyila, who states that defendant has accepted these goods and has not contested the invoices.

▇ In response, defendant first contends that plaintiff's summary judgment motion is premature since defendant has not yet filed an answer to the Amended Complaint. Under Fed.R.Civ.P. 56(a), the plaintiff may move for summary judgment on all or part of its claims after the expiration of 20 days from the commencement of the action. This rule specifically changed the prior rule, which permitted a plaintiff to move for summary judgment only after a formal answer to the complaint was filed. See "Notes of Advisory Committee on Rules" to Rule 56. Plaintiff's motion is therefore timely.

Next, defendant disputes the amount plaintiff alleges is owed. John Ahern, the President of defendant, explains in his certification that the amount claimed by plaintiff should be offset by the amount of $68,122.50, which defendant paid for certain computers supplied by plaintiff. According to Ahern, in furtherance of its exclusive distributor arrangement with plaintiff, defendant purchased computers from plaintiff and supplied them free of charge to hospitals. Both plaintiff and defendant expected that the hospitals would purchase catheters manufactured by plaintiff from defendant at a price that would enable defendant to earn a profit on the distribution of both the computers and catheters. This expectation has been thwarted, however, by plaintiff's termination of defendant's distributor relationship, precluding defendant from earning the anticipated profit on future sales of catheters. Recognizing this fact, Ahern states that representatives of plaintiff agreed to repay defendant for the purchase of the computers when they are returned or accounted for. Indeed, the Third Count of the Complaint seeks an accounting for these computers.

▇ Despite the apparent equities supporting defendant's claim for an offset from the amounts owed to plaintiff, partial summary judgment on the Second Count of the Complaint is appropriate. The plaintiff delivered the catheters at the contract price indicated on the invoices and the defendant to date has not rejected these goods. The plaintiff is therefore entitled to the price for these goods under section 2–607 of the Uniform Commercial Code, N.J.S.A. 12A:2–607. Defendant does not dispute that the goods were delivered, that the invoice price accurately reflects the price for the goods and that the goods have not been rejected or returned to plaintiff. Accordingly, no genuine dispute as to any material fact regarding plaintiff's right to recover on these invoices is present.

The defendant's assertions of its entitlement to an offset does not preclude this court from granting partial summary judg-

---

**3.** The First and Third Counts of the Amended Complaint seek a judicial declaration that there is no contractual or other legal relationship between the parties requiring plaintiff to continue to do business with the defendant Surgical Specialties Instrument Company, Inc., an injunction restraining defendant from interfering with plaintiff's business, and an accounting and payment for certain computers provided by plaintiff to defendant.

ment on these contract claims since no material facts remain for adjudication. 6 Moore's Fed.Prac. ¶ 56.17[15] at 813 ("practical administration dictates that [the court] should settle what issues are not disputed, and thus shape up the case for trial of those that are"). In similar circumstances, other courts have granted partial summary judgment on contract claims, even though the defendant could be entitled to a setoff or recoupment if it were successful on its counterclaim. Thus, the court in *Chemetron Corp. v. Cervantes*, 92 F.R.D. 26 (D.P.R.1981), held that plaintiff was entitled to summary judgment on its claim to recover payments due under a loan agreement and promissory note, despite the fact that defendant's compulsory counterclaim for amounts exceeding the main claim remained for adjudication. *See also Electroglas, Inc. v. Dynatex Corp.*, 473 F.Supp. 1167 (N.D.Cal.1979) (summary judgment granted on defendant's counterclaim for balance due on promissory note, leaving plaintiff's antitrust claim, which could offset the contract claim, for trial). Therefore, plaintiff's motion for summary judgment on the Second Count of the Amended Complaint in the amount of $43,330.53 is granted. Enforcement of the judgment will be stayed under Fed.R.Civ.P. 54(b) until the remaining claims between the parties are resolved.

### IV. *Conclusion*

Defendant's motion for dismissal of the complaint for lack of personal jurisdiction and ineffective service of process is denied. Plaintiff's motion for partial summary judgment on the Second Count of the Amended Complaint is granted.

Plaintiff's attorneys are requested to submit a form of order in conformity with this opinion.