Margaret W. FULLER, et al.

v.

Ray M. HARDING, Judge, et al.

Civ. A. No. 88–5432.

United States District Court,
E.D. Pennsylvania.

Sept. 6, 1988.

Margaret Fuller, pro se.

John B. Langel, Richard Storuse, Ballard, Spar, Andrews & Ingusol (Carlie Christensen, Gen. Counsel, State of Utah, of counsel), for Harding.

Patrick W. Kitteredge, Philadelphia, Pa., for Church of Latter Day Saints.

### MEMORANDUM

NEWCOMER, District Judge.

I have before me a very unusual civil rights action brought by plaintiffs pursuant to 42 U.S.C. § 1983 and § 1985(3). Defendants Ray M. Harding and The Church

of Jesus Christ of Latter Day Saints (Mormons) have each filed motions to dismiss which the court must now resolve.

## I. *Facts* [1]

Plaintiffs' complaint arises out of a dispute between Plaintiff Margaret W. Fuller and her first husband, Warner P. Woodworth, over the temporary custody of their fourteen (14) year old son, Marc. Plaintiffs are Margaret W. Fuller, Marc's mother, and Anne Woodworth and David W. Woodworth, two of Marc's older siblings. Defendants are Utah state judge Ray M. Harding and the Church of Jesus Christ of Latter Day Saints (Mormon Church).

The general facts leading to this lawsuit can be stated as follows. When Plaintiff Margaret Fuller and her first husband were divorced, the Utah state courts granted custody of their two older children, Anne and David Woodworth, to Ms. Fuller. Mr. Woodworth was granted custody of the couple's two younger children, Julie and Marc Woodworth.

Marc visited Plaintiff Fuller at her home in Pennsylvania in the summer of 1986 pursuant to a Utah state court order. Marc was scheduled to return to his father's home on July 27 or 28, 1986. On July 24, 1986, Plaintiff Fuller filed a petition in the Court of Common Pleas of Montgomery County, Pennsylvania seeking custody of Marc. Her request for a temporary custody order on that day was denied by the court. A hearing was scheduled for August 21, 1986.

On July 31, 1986, Judge Ray M. Harding of the Fourth Judicial District of Utah County, State of Utah, issued an Order for the immediate return of Marc to his father's custody. The July 31, 1986 order was based on the motion of Mr. Woodworth and was issued because Plaintiff Fuller had not returned Marc to his father as she was

required to do. The July 31, 1986 order directed the police in any district where Marc was found to assist Mr. Woodworth in obtaining physical custody.

On August 1, 1986, at 10:00 a.m., the Pennsylvania state police arrived at Plaintiff Fuller's home to pick up Marc. The state police agreed to defer action pending an emergency hearing in the Court of Common Pleas of Montgomery County. A hearing was held before the Honorable Anita B. Brody at 1:30 p.m. that day. Marc Woodworth, his brother David, his father, and his mother were all heard by the Court. In addition, Judge Brody spoke to Judge Harding on the telephone during the hearing. Judge Harding assured Judge Brody that he would entertain a motion to modify of the parties' custody decree in Utah if Warner Woodworth was planning to move to Hawaii and was planning to take Marc with him so that communication with his mother would be very difficult if not impossible.

At the conclusion of the hearing, Judge Brody ruled that she had no jurisdiction and had to respect the Utah order and give it full faith and credit, thereby returning Marc to his father. She also recommended to Plaintiff Fuller that if she wished to modify the existing custody order she should return to Utah to do so. Sometime on August 1, 1986, a criminal information was filed in Utah state court charging Margaret Fuller with the felony of custodial interference because she had detained her son beyond the permitted visitation period.

Plaintiff Fuller did seek modification of the custody order in the Utah state court. When Plaintiff Fuller arrived in Utah, she was arraigned on her criminal indictment. Shortly thereafter, on August 18, 1986, a hearing was held and an agreement reached between Plaintiff Fuller and Mr. Woodworth. The agreement was read into

---

**1.** For the purpose of resolving these motions to dismiss, all material allegations of plaintiffs' complaint have been treated as true, and they will be interpreted in the light most favorable to plaintiffs, the nonmoving parties. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80

(1957). Similarly, the allegations in this pro se complaint should be liberally construed, *Becker v. Commission of Internal Revenue,* 751 F.2d 146, 149 (3rd Cir.1984), even though Plaintiff Fuller is an attorney. The filings in this case demonstrate the highly emotional and sometimes less than rational nature of this action.

the record as a stipulation between the parties, and it provided that "based on Marc's choice" he would return to Pennsylvania with his mother and remain there, in her temporary custody, until July 1, 1987. This stipulation was incorporated in a proposed order and signed by Judge Ray M. Harding on September 2, 1986.

Marc Woodworth did not return to Pennsylvania with Plaintiff Fuller, and he has not returned to Pennsylvania as of the date of this memorandum and order. Apparently, Marc's father first attempted to persuade Marc not to go to Pennsylvania. Mr. Woodworth hid Marc from Plaintiff Fuller and her counsel. Mr. Woodworth then took Marc to Hawaii. Subsequently, Plaintiff Fuller returned to Pennsylvania.

In November, 1986, Plaintiff Fuller contacted Hawaiian authorities and began proceedings to obtain temporary custody of her son based on the September 2, 1986 Utah state court order and 28 U.S.C. § 1738A, which requires states to give full faith and credit to the valid custody decrees of other states. On February 18, 1987, based on the September 2, 1986 Utah order, the Hawaiian authorities picked up Marc Woodworth, placed him in protective custody pending transportation to Pennsylvania, and telephoned Plaintiff Fuller to arrange transportation. On February 19, 1987, when Plaintiff Fuller called the Hawaiian authorities to make final travel arrangements, they stated that Defendant Judge Harding had intervened surreptitiously in the enforcement of his own Order and explained "I never intended for Marc Woodworth to go to Pennsylvania with his mother". The Hawaiian authorities further stated that, because of Judge Harding's unilateral intervention, their hands were tied and that they would have to return Marc to his father.

Plaintiff Fuller did not try to enforce her right to custody of Marc further in any state court system after February, 1987, and she has had no contact with Marc since his father took him to Hawaii. Plaintiffs filed this action in federal court after they became aware that Julie Woodworth, whose permanent custody was modified from Warner Woodworth to Plaintiff Fuller in December, 1987, had been molested repeatedly by her paternal grandfather while she was in her father's care in Utah.

Plaintiffs base their claims on 42 U.S.C. § 1983 and § 1985(3). They seek a prospective injunction against Defendant Harding to prevent his future interference with custody enforcement proceedings. They also seek the return of Marc to Pennsylvania basing their request on 28 U.S.C. § 1738A. Plaintiffs also seek compensatory and punitive damages in the amount of $10,000,000.00 against the Mormon Church for initiation and participation in a conspiracy to deprive plaintiffs of equal protection of the laws.

## II. *Discussion*

Both defendants to this action filed motions to dismiss based on a variety of grounds. The court will dismiss plaintiffs' complaint on three grounds: lack of subject matter jurisdiction; failure to state a claim upon which relief can be granted; and lack of personal jurisdiction.

### A. Lack of Subject Matter Jurisdiction.

■ This court lacks subject matter jurisdiction over this action based on two methods of analysis. First, it is well settled that federal district courts lack authority to review state court judgments where the relief sought is in the nature of appellate review. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Anderson v. State of Colorado*, 793 F.2d 262 (10th Cir. 1986) (applying the *Rooker* doctrine to a custody dispute alleging a 42 U.S.C. § 1983 violation). The *Feldman/Rooker* doctrine applies whether or not the state litigation has reached the state's highest court. *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n. 3 (9th Cir.1986); *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986). It is particularly applicable where the constitutional claims presented to the district court are inextricably intertwined with the state court's action so that the district

court is being called upon to review the state court decision. *Feldman*, 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16. *Worldwide Church of God*, 805 F.2d at 892. The *Feldman* jurisdictional bar has been held to apply in the § 1983 context. *Worldwide Church of God*, 805 F.2d at 893 n. 4.

An exercise of jurisdiction in this case clearly would involve an indepth review of Judge Harding's custody orders in this case, both the September 2, 1986 order and the alleged subsequent modification of that order. The constitutional claims involved in this action are inextricably intertwined with the state court action thus prohibiting involvement by the federal courts.

If constitutional error occurred, plaintiffs' appropriate course of action would be to seek a remedy through the Utah appellate procedure and ultimately review by the United States Supreme Court. *Anderson v. State of Colorado*, 793 F.2d 262, 263 (10th Cir.1986); *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986). Otherwise, any person dissatisfied with a state custody award could seek review in the district court under the guise of a § 1983 violation.

Similarly, abstention can also be justified, and the case dismissed for lack of subject matter jurisdiction, based on the domestic relations abstention doctrine recognized in this Circuit. *Solomon v. Solomon*, 516 F.2d 1018 (3rd Cir.1975); *Magaziner v. Montemuro*, 468 F.2d 782 (3d Cir. 1972); *Masso v. Masso*, C.A. No. 88–4029, slip op. (E.D.Pa. August 19, 1988) (Shapiro, J.) [available on WESTLAW, 1988 WL 87821]; *Robinson v. Robinson*, 523 F.Supp. 96 (E.D.Pa.1981). The abstention doctrine is premised on the policy that domestic relations is an area of the law in which the state has a strong interest and a well-developed competence for handling the variety of issues and fact situations which arise. *Magaziner*, 468 F.2d at 787. The United States Supreme Court recently reaffirmed the traditional state dominated role in custody disputes in *Thompson v.*

*Thompson*, —— U.S. ——, 108 S.Ct. 513, 519, 98 L.Ed.2d 512, 524 (1988).[2]

If the court were to assume jurisdiction over this matter, it would inevitably have to determine if it is presently in Marc's "best interest" to return to Pennsylvania because Judge Harding's temporary custody order expired on July 1, 1987. This determination is best left to state courts skilled and experienced in that type of analysis. But *c.f., McLaughlin v. Pernsley*, 693 F.Supp. 318 (E.D.Pa.1988) (Hannum, J.).

Under either method of analysis plaintiffs' complaint must be dismissed because the court lacks subject matter jurisdiction over the action.

**B. Failure to State a Claim for Relief.**

 Plaintiffs have failed to state a claim for relief against the Mormon Church. Plaintiffs' complaint is based upon 42 U.S.C. § 1983 and § 1985(3). To maintain a cause of action against the Morman Church under either of these sections, plaintiffs must prove that a conspiracy existed between Judge Harding and the Mormon Church.

Plaintiffs' complaint contains numerous conclusory allegations that a conspiracy motivated by gender based animus existed between the defendants. The complaint, however, is totally lacking in any form of factual support for these allegations. Broad and conclusory allegations, without some form of factual support, will not state a claim based on a conspiracy pursuant to 42 U.S.C. § 1983 or § 1985(3). *Negrich v. Hohn*, 379 F.2d 213 (3rd Cir.1967); *Esser v. Weller*, 467 F.2d 949 (3rd Cir.1972); *Shah v. MetPath*, 470 F.Supp. 158 (E.D.Pa.1979). Therefore, plaintiffs have failed to state a claim for relief against the Mormon Church based on § 1983 or § 1985(3).

**C. Lack of Personal Jurisdiction.**

Plaintiffs allege personal jurisdiction

---

**2.** Since *Thompson*, plaintiffs' reliance on *Flood v. Braaten*, 727 F.2d 303 (3rd Cir.1984) is mis-

placed.

over Defendant Harding[3] pursuant to service made in accordance with Rule 4 of the Federal Rules of Civil Procedure. Rule 4(e) requires that service of process and personal jurisdiction be determined by the rules or statutes of the state where the district court is situated. The Pennsylvania long-arm statute, 42 Pa.C.S.A. §§ 5322(a)(4) and 5322(b), provides for service of process and personal jurisdiction rules applicable to the courts in the Commonwealth.

In addition to satisfying the requisites of the long-arm statute of the state, the exercise of personal jurisdiction must also be consistant with the due process guarantees of the United States Constitution. Because I have determined that personal jurisdiction over Defendant Harding would violate the due process clause, I will not address the Pennsylvania long-arm statute.

The due process clauses of the fifth and fourteenth amendment operate as limitations on the jurisdiction of courts to enter judgments affecting non-resident defendants. *Shaffer v. Heitner,* 433 U.S. 186, 198–200, 97 S.Ct. 2569, 2576–77, 53 L.Ed.2d 683 (1977). The standard for addressing these constitutional limitations were established in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court held that "traditional notions of fair play and substantial justice" required that the defendant have certain "minimum contacts" with the forum state before it could be subject to the courts jurisdiction. *Id.* at 316, 66 S.Ct. at 158. This requirement rests on two basic premises: First "[i]t protects the defendant against the burdens of litigating in a distant or inconvenient forum. And, [second] it acts to ensure that the state, through their courts, do not reach out beyond the limits imposed on their status as coequal sovereigns in a federal system." *World–Wide Volkswagen v. Woodson,* 444 U.S.

286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

The Third Circuit has construed the requirements of due process in personal jurisdiction questions in different ways depending upon the nature of the claim. *See Paolino v. Channel Home Centers,* 668 F.2d 721, 724 (3d Cir.1981); *Electro–Catheter Corp. v. Surgical Specialities Instrument Co., Inc.,* 587 F.Supp. 1446, 1449 (D.N.J.1984).

If a claim is premised on conduct of a defendant within the forum state, a court "must inquire whether the relationship of the transaction at issue to the forum justifies the forum state's assertion of jurisdiction over the defendant" under the "minimum contacts" standard. *Id.* at 1449. On the other hand, if the claim does not arise out of defendant's activities within the forum state, this court may only exercise personal jurisdiction if defendant's contacts within the forum state are continuous, systematic and substantial. *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982).

■ In the instant case, plaintiffs' claims against defendant Harding *do not* arise out of defendant's activities within the forum state. The only contact defendant Harding had with the Commonwealth of Pennsylvania is that a Pennsylvania Court of Common Pleas Judge called Judge Harding at his office in Provo, Utah, concerning a prospective modification of a custody decree between Plaintiff Fuller and Warner Woodworth.

The effect of the telephone conversation was that Judge Harding assured Judge Anita Brody that he would consider a modification of the existing custody decree due to changed conditions—namely Warner Woodworth's intention to move with the children to Hawaii.[4]

---

3. Clearly this court would have personal jurisdiction over the Mormon Church due to the systematic and continuous operation of that religious organization in the Commonwealth of Pennsylvania.

4. Judge Anita Brody of the Pennsylvania Court of Common Pleas recounted the conversation in the official court record:

> I also took the liberty of calling Judge Harding in Utah, and Judge Harding expressed to me that he was very familiar with the case and that he had presided over it and he had just issued his order, and he felt that a modifi-

It is clear to me that the injuries which plaintiffs allege could not have arisen from this single contact with the Commonwealth of Pennsylvania. It is also obvious that defendant Harding, through this contact, has not attempted to purposely avail himself of the privileges and immunities of the Commonwealth. Nor does this single contact amount to "continuous or systematic" activities within Pennsylvania.

Therefore, under the "minimum contacts" test of *International Shoe* this court may not exercise personal jurisdiction over defendant Harding in this instance.

An appropriate order follows.

### ORDER

AND NOW, this 6th day of September, 1988 upon consideration of defendants' motions to dismiss and plaintiffs' response thereto, it is hereby Ordered that plaintiffs' complaint is dismissed for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted and lack of personal jurisdiction.

AND IT IS SO ORDERED.

cation of the present order would be [sic] if there was a change in circumstances, and that he would entertain a modification of the order due to the changed circumstances of Mr. Woodworth moving to Hawaii, which might dictate a different type of order.

I explained my concerns to the Judge, explaining to him that I think the child's real concern is that he wouldn't see his mother again and that I felt that this was something to be protected. And he seemed understanding of that. Transcript of August 1, 1986, hearing before the Honorable Anita B. Brody, Judge, Court of Common Pleas of Montgomery County, Pennsylvania, at p. 25 (attached as Exhibit B to plaintiffs' complaint).