**James Q. HORNE, Jr., Appellant,**

v.

**ADOLPH COORS COMPANY; R. S. Woods, Inc. and Kingston Wine and Liquor Shop, Inc.**

No. 81–2388.

United States Court of Appeals, Third Circuit.

Argued June 16, 1982.

Decided July 22, 1982.

William L. Muckelroy (argued), Trenton, N. J., for appellant.

Ronald M. Sturtz (argued), Robert B. Smith, Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, P. A., Newark, N. J., Thomas S. Birney, Bradley, Campbell & Carney, Golden, Colo., for appellee, Adolph Coors Co.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

James Q. Horne, the owner of a United States patent covering a device for depressurizing beverage cans, appeals from an order dismissing his complaint charging patent infringement by Adolph Coors Company (Coors) pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction over that defendant. Coors has moved to dismiss the appeal for lack of appellate jurisdiction. We hold that we have appellate jurisdiction and we reverse the order dismissing the complaint.

### I. *Appellate Jurisdiction*

■ Horne, a New Jersey resident, commenced the action under 35 U.S.C. § 271(c) against Coors, a Colorado corporation which produces beer in cans, and against two New Jersey distributors of beer, R.S. Wood, Inc. and Kingston Wine & Liquor Shop, Inc. After it was served with process in Colorado, Coors moved successfully for an order dismissing the complaint against it for lack of personal jurisdiction. That order was entered on June 2, 1981. Horne, on June 15, 1981, filed a motion to vacate or amend the order pursuant to Fed.R.Civ.P. 59. While that motion was pending, he filed a

Notice of Appeal on July 1, 1981. A week later the district court denied his Rule 59 motion. Meanwhile on July 6, Horne voluntarily dismissed the complaint against R.S. Wood, Inc. Thereafter on July 28, 1981, a stipulation of dismissal was filed as to the remaining defendant, Kingston Wine & Liquor Shop, Inc. Thus all claims against all parties have been terminated.

Coors does not dispute that the order dismissing the complaint against it for lack of personal jurisdiction is now final within the meaning of Fed.R.Civ.P. 54(b). It urges, however, that no timely notice of appeal was filed. In advancing this argument Coors relies on Fed.R.App.P. 4(a)(4) which provides that "[a] notice of appeal filed before the disposition of any [Rule 59] motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion...." Coors urges that since the Rule 59 motion was not disposed of until July 13, 1981, the July 1, 1981 notice of appeal was a nullity.

This Court has definitively rejected Coors' position in two recent cases. In *Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927 (3d Cir. 1982), the appellant had filed a Rule 59 motion on November 17, 1981, and a notice of appeal, while the motion was unresolved, on November 19, 1981. We refused to dismiss the appeal, noting that "though a premature notice of appeal is subject to dismissal, we have generally allowed appellant to proceed unless the appellee can show prejudice resulting from the premature filing of the notice." In *Griggs* we referred to our opinion in *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 882 n.2 (3d Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981), which states:

> We are reluctant to treat the default [under Rule 4(a)(4)] as jurisdictional ... in light of the substantial forfeiture that would result and the absence of any prejudice to appellees resulting from the premature filing.... We have discretion under Appellate Rule 2 to "suspend the requirements or provisions of any of

these rules in a particular case ... on [our] own motion," and we exercise our discretion to waive the Rule 4(a) default in this case. We do so "to relieve the litigants of the consequences of default when manifest injustice would otherwise result."

The *Griggs* and *Tose* cases construe the 1979 amendment to Rule 4(a) as making no change in the prior rule respecting this court's authority to give effect to notices of appeal filed prematurely. *See Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962); *Hodge v. Hodge*, 507 F.2d 87, 89 (3d Cir. 1975); *Hamilton v. Stillwell Van and Storage Co.*, 343 F.2d 453 (3d Cir. 1965).

No showing of prejudice from the premature filing of the notice of appeal has been made in this case. Thus the *Griggs* and *Tose* cases are dispositive, and we will consider the merits of the appeal.

## II. *Personal Jurisdiction*

Service of process was made on Coors pursuant to Fed.R.Civ.P. 4(e), which adopts the long-arm method of service available in the forum state. New Jersey Civil Practice Rule 4:4–4(c) permits service of process upon a foreign corporation to the extent permitted by due process. *See Avdel Corp. v. Mecure*, 58 N.J. 264, 277 A.2d 207 (1971). Thus our inquiry presents the question whether due process permits the district court to exercise personal jurisdiction over Coors in this patent infringement action.

The complaint alleges that Horne, who resides in North Brunswick, New Jersey, holds United States Patent No. 2,858,721 for a device for depressurizing beverage cans, and that Coors, a brewer, has sold in interstate commerce cans of beer to which are attached a device infringing that patent. Horne charges, further, that many of the infringing devices have found their way through the channels of interstate commerce to distributors in New Jersey where they have been sold to consumers who use the devices.

Coors supported its motion to dismiss with an affidavit by its Senior Vice President for Marketing and Sales, which alleges

that Coors is a Colorado corporation which is not qualified to do business in New Jersey, which pays no income tax to that state, maintains no employees or sales agents in New Jersey, owns no real or personal property there, and neither solicits nor accepts orders for its product from New Jersey. The affidavit concedes that Coors beer is sold in the state, but attributes those sales to what it calls a "bootleg" market which it actively discourages. The Coors beer sold by R.S. Wood, Inc. and Kingston Wine & Liquor Shop, Inc. concededly originated with Coors, having been acquired from one of Coors' licensed distributors, if not from Coors itself. Coors prefers to confine its marketing to nineteen western states but has registered its brand name in New Jersey with the Secretary of State and the New Jersey Division of Alcoholic Beverage Control to prevent use of the name by other brewers.[1]

In *Paolino v. Channel Home Centers*, 668 F.2d 721 (3d Cir. 1981), this court discussed the circumstances in which the *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) due process rule permits a forum to exercise in personam jurisdiction in a suit seeking protection of intangible intellectual property owned by a resident of the forum state. That case recognized the settled distinction between personal jurisdiction in cases in which the defendant's forum-related activities did not give rise to the claim and personal jurisdiction in cases involving specific forum-related acts or series of acts. *Id.* at 724. *See Schwilm v. Holbrook*, 661 F.2d 12 (3d Cir. 1981). The district court recognized that distinction and concluded, we think correctly, that Coors' contacts with New Jersey were insufficient to establish its general amenability to suit in a New Jersey forum. The court then turned to the separate issue of personal jurisdiction for the specific transactions complained of and concluded that due process prohibited the exercise of jurisdiction with respect to those

transactions. In reaching that conclusion, however, the court took too broad a view of the due process limitations on a forum's ability to vindicate harm to its residents from purposeful activities engaged in outside the forum's borders.

In *Paolino* the plaintiff was a Pennsylvania resident who developed an apparatus which he maintained as a trade secret. He disclosed his apparatus in confidence to Air Control Industries, Inc. Allegedly in breach of that confidential relationship, Air Control manufactured the device and sold it to Channel Home Centers in New Jersey. Channel, a retailer, offered the device for sale in Pennsylvania. Although Air Control was a Tennessee corporation, not qualified to do business in Pennsylvania, this court held that the Eastern District of Pennsylvania could, consistent with due process, exercise personal jurisdiction over it in an action charging that it caused injury to Paolino by a breach of a confidential relationship, on a "tort out/harm in" theory. 668 F.2d at 724. Pennsylvania's interest in protecting its residents owning intellectual property from harm that was clearly and specifically foreseeable justified a Pennsylvania forum's exercise of in personam jurisdiction. As to personal inconvenience, we observed that "fairness to the defendant as to a forum must ... take some account of the fact that the defendant's residence is inconvenient for the plaintiff." 668 F.2d at 725. We found "no suggestion [in the record] that litigating in Philadelphia rather than in Nashville with respect to a relationship knowingly undertaken with a Pennsylvania resident would be fundamentally unfair to Air Control." *Id.*

In *Paolino*, because the form of intellectual property in issue—a trade secret or confidential disclosure—was a creation of state law, and the cause of action for its protection was one cognizable in state courts, we discussed both federalism concerns and fairness to the defendant in the plaintiff's choice of a forum. Since *Paolino*,

---

1. Coors also owns a subsidiary, Coors Porcelain Co., which has a substantial place of business in New Jersey. Coors Porcelain Co. is not a beverage brewer or distributor, and its presence in New Jersey is not dispositive.

the Supreme Court, in *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* —— U.S. ——, —— n.10, 102 S.Ct. 2099, 2104 n.10, 72 L.Ed.2d 492 (1982), has made this somewhat surprising observation:

It is true that we have stated that the requirement of personal jurisdiction, as applied to state courts, reflects an element of federalism and the character of state sovereignty vis-a-vis other states. For example, in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–293 [100 S.Ct. 559, 564–65, 62 L.Ed.2d 490] (1980), we stated:

"[A] state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State. The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." (Citations omitted.)

Contrary to the suggestion of Justice POWELL, *post,* at 2110–2111, our holding today does not alter the requirement that there be "minimum contacts" between the nonresident defendant and the forum state. Rather, our holding deals with how the facts needed to show those "minimum contacts" can be established when a defendant fails to comply with court-ordered discovery. The restriction on state sovereign power described in *World-Wide Volkswagen Corp.,* however, must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause. That clause is the only source of the personal jurisdiction requirement and the clause itself makes no mention of federalism concerns. Furthermore, if the federalism concept operated as an independent restriction on the sovereign power of the court, it would

not be possible to waive the personal jurisdiction requirement: Individual actions cannot change the powers of sovereignty, although the individual can subject himself to powers from which he may otherwise be protected.

Whether, as Justice Powell's concurring opinion suggests, —— U.S. at ——, 102 S.Ct. at 2110, the quoted language announces the abandonment of the rationale of *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), is an intriguing question which need not be answered in this case.[2] It need not be answered because the nature of the intellectual property interest relied on by Horne, and the cause of action for its protection, cannot involve an issue of the respective limits of conflicting state sovereignties. The patent Horne owns is a property interest created by federal law, and the cause of action for patent infringement, by virtue of the exclusivity provision in 28 U.S.C. § 1338(a), is one over which no state could assert adjudicatory competence. Congress could, without offending the legitimate interest of any state, provide that the owner of federally protected intellectual property could always sue an infringer in his home district. The only constitutional limitation on Congressional power to provide a forum is whatever fairness to the defendant is required by fifth amendment due process.

As to fairness to the defendant, we conclude that *Paolino* is indistinguishable and controlling. In that case the intellectual property for which a Pennsylvania resident sought protection was a creature of state law. But insofar as the situs of the property damaged by the alleged wrongdoing is a concern, both a state trade secret and a patent should be deemed to have their fictional situs at the residence of the owner. Air Control became aware that its manufacture and sale of Paolino's apparatus would cause harm to his intellectual

2. Possibly what the court is suggesting is that the federalism aspect of the *International Shoe* rule is a constitutionally protected expectation in a proper choice of the governing law.

property because it knowingly received his disclosure in confidence. Coors had constructive notice of Horne's patent. 35 U.S.C. § 271. Like any manufacturer, it was aware that if the products it placed in the stream of interstate commerce infringed a valid patent it would cause injury to the owner thereof, in whatever state he resided. Coors placed its cans in the stream of interstate commerce, and some of them actually were sold in New Jersey, where the patent owner resides. The legal issues of validity and infringement are not such as will be likely to require witnesses from any particular locality. In these circumstances it cannot be said that requiring the alleged infringer to defend in the forum chosen by the patent owner, which also happens to be the patent owner's residence, so offends traditional notions of fairness as to be a violation of due process and therefore unconstitutional.

■ Coors urges that in patent cases Congress has specified the limits of due process by the restrictions on venue codified in 28 U.S.C. § 1400(b). That argument cannot be accepted. While the present patent venue statute limits venue in infringement suits outside the defendant's judicial district to districts in which acts of infringement occur and the defendant has a regular place of business, the former patent venue statute permitted such suits wherever the defendant could be found. Act of March 3, 1875, ch. 137, § 1, 18 Stat. 470. See American Cyanamid Co. v. Nopco Chemical Co., 388 F.2d 818 (4th Cir.), cert. denied, 392 U.S. 906, 88 S.Ct. 2057, 20 L.Ed.2d 1364 (1968). In restricting venue in patent infringement actions, Congress did not and indeed could not assume the authority to make a constitutional law pronouncement about the due process limits of in personam jurisdiction. The distinction between due process limitations and non-constitutional statutory venue limitations is illustrated by the fact that in declaratory judgment suits for patent invalidity or non-infringement the general venue provision, 28 U.S.C. § 1391, applies, rather than 28 U.S.C. § 1400(b). E.g., General Tire & Rubber Co. v. Watkins, 326 F.2d 926 (4th Cir.), cert.

denied, 377 U.S. 909, 84 S.Ct. 1166, 12 L.Ed.2d 179 (1964); Medtronic, Inc. v. American Optical Corp., 337 F.Supp. 490 (D.Minn.1971); Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219 (D.N.J.1966).

### III. Venue

■ The distinction between venue and personal jurisdiction is important, because even if venue has been improperly laid the district court has authority "if it be in the interest of justice, [to] transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Coors made a motion to dismiss because venue in New Jersey was improper under 28 U.S.C. § 1400(b). The district judge, having decided that the court lacked in personam jurisdiction, declined to rule upon that motion and thus had no occasion to consider whether, assuming venue in New Jersey was improper, a section 1406 transfer to some district more accessible to Horne than Colorado was proper, or whether he would be prejudiced in any way by a dismissal rather than a transfer, even to Colorado. Indeed even if the court's ruling on personal jurisdiction had been correct, an appropriate disposition would be to vacate its order dismissing the action and to remand to afford an opportunity to move for transfer of the case to a district where it could have been brought. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); Schwilm v. Holbrook, 661 F.2d 12, 15 (3d Cir. 1981); O'Neal v. Hicks Brokerage Co., 537 F.2d 1266, 1268 (4th Cir. 1976); Taylor v. Love, 415 F.2d 1118, 1120 (6th Cir. 1969), cert. denied, 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); Mayo Clinic v. Kaiser, 383 F.2d 653, 655 (8th Cir. 1967); Dubin v. United States, 380 F.2d 813 (5th Cir. 1967); United States v. Berkowitz, 328 F.2d 358 (3d Cir.), cert. denied, 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964).

### IV. Conclusion

The judgment dismissing the complaint for lack of personal jurisdiction shall be

reversed and the case remanded for further proceedings consistent with this opinion.