**AMP INCORPORATED, Plaintiff,**

v.

**METHODE ELECTRONICS INCORPORATED, Defendant.**

No. 1:CV:92–248.

United States District Court, M.D. Pennsylvania.

May 12, 1993.

Jay L. Seitchik, AMP Inc., Harrisburg, PA, for plaintiff.

Craig A. Stone, Mette, Evans & Woodside, Harrisburg, PA, for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Amp Incorporated (Amp) filed this action against Methode Electronics Incorporated (Methode) to recover for the alleged infringement of its patent rights in two connector assembly designs.[1] Amp bases its right to sue on its status as exclusive licensee of United States Patent No. 4,979,792 (the '792 patent) issued December 25, 1990 and of United States Patent No. 5,076,656 (the '656 patent) issued December 31, 1991. Amp alleges that Methode has manufactured and sold connector assemblies embodying Amp's patented, trademark designs.

Based on these acts, Amp alleges the violation of: 1) United States patent law (Counts I and II); 2) federal statutes prohibiting unfair competition, 15 U.S.C. § 1125(a)[2]

---

1. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121(a). Section 1121(a) provides, in relevant part:
    The district and territorial courts of the United States shall have original jurisdiction ... of all actions arising under this chapter, without regard to the amount in controversy or diversity or lack of diversity of the citizenship of the parties.

2. Section 1125 provides, in relevant part:

    (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin ... which

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsor-

(Count III); and 3) Pennsylvania common law (Count IV). (Plaintiff's amended complaint, Record Document No. 8)[3]

As recourse for these injuries, Amp seeks: 1) a ruling that Methode has infringed the '792 and '656 patents and an order permanently enjoining further acts of infringement; 2) damages for patent infringement pursuant to 35 U.S.C. § 284;[4] 3) treble damages pursuant to 35 U.S.C. § 284 for willful violation of the '792 patent; 4) attorneys' fees pursuant to 35 U.S.C. § 285;[5] 5) an order permanently enjoining Methode from: a) manufacturing, selling, or otherwise using a connector assembly that is confusingly similar in design to Amp's connector assembly; b) infringing Amp's trade dress; c) unfairly competing with Amp; d) causing a likelihood of confusion, deception or mistake; and 7) an accounting by Methode for all profits received from any business activities conducted by Methode through unfair competition and directing Methode to account for all damages, including attorneys' fees sustained by Amp on account of the unfair competition and awarding Amp three times that amount; 8) the costs of this action; and 9) such other relief as the court may deem proper.

There are currently four motions before the court: 1) defendant's motion to dismiss or transfer venue (Record Document No. 3); 2) defendant's motion to dismiss plaintiff's patent infringement claims (Record Document No. 2) due to the alleged failure to join a necessary and indispensable party; 3) plaintiff's motion to compel discovery on the question of venue (Record Document No. 43);

and 4) plaintiff's motion to add an additional plaintiff (Record Document No. 45).

For the reasons discussed below, we will issue an order: 1) denying defendant's motion to dismiss or transfer venue (Record Document No. 3); 2) denying as moot defendant's motion to dismiss Count I of plaintiff's complaint for patent infringement (Record Document No. 2); 3) denying plaintiff's motion to compel discovery on the question of venue and jurisdiction as moot (Record Document No. 43); and 4) granting plaintiff's motion to add Whitaker Corporation as a party plaintiff (Record Document No. 45).

## DISCUSSION

### Motion to dismiss or transfer venue

Defendant moves to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(2) and (3) on the grounds that Methode has insufficient contacts with Pennsylvania to justify this court's exercise of personal jurisdiction over it. Defendant seeks, in the alternative, an order transferring this action to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a), where, it argues, venue is proper.

■ Under Rule 4(e) of the Federal Rules of Civil Procedure, the service of process rules of the state where the court sits govern personal jurisdiction issues. *Bane v. Netlink, Inc.,* 925 F.2d. 637, 639 (3d Cir.1991). This rule applies to actions grounded in federal law, including patent law, as well as those grounded in state law. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293 (3d Cir.1985) (patent infringement action).

---

ship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a).

**3.** Plaintiff amended its complaint on May 12, 1992 to allege Methode's infringement of patent '656.

**4.** Section 284 provides:
Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.
The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.
35 U.S.C. § 284.

**5.** Section 285 provides:
The court in exceptional cases may award reasonable attorney fees to the prevailing party.
35 U.S.C. § 285.

Pennsylvania's long-arm statute, 42 Pa. Cons.Stat.Ann. § 5322(b) provides that *in personam* jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322(b) (Purdon 1981). The statute's express incorporation of the federal due process standard makes the court's inquiry "principally one into the constitutional propriety of the exercise of jurisdiction." *Daetwyler, supra,* 762 F.2d at 293.

Because this is a federal question case and a federally created right is at issue, we examine due process in light of the Fifth Amendment rather than the Fourteenth. The standards applied are the same as those in a Fourteenth Amendment analysis. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389 n. 2 (8th Cir.1991); *Daetwyler, supra,* 762 F.2d at 293; and *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458 (D.Del.1991).

■ Once a defendant has properly raised a jurisdictional defense, the plaintiff bears the burden of proving that minimum constitutional requirements are satisfied. To sustain its burden, the plaintiff cannot rely on the allegations of the complaint, but must produce supporting affidavits "or other competent evidence". *North Penn Gas Co. v. Corning Natural Gas Corp., per curiam,* 897 F.2d 687, 689 (3d Cir.), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990).

Personal jurisdiction is a fact-specific inquiry. The focus is on the relationship among the defendant, the forum state and the litigation. *Daetwyler, supra,* 762 F.2d at 293. Jurisdiction may be based either on the conduct of the non-resident defendant which gave rise to the cause of action (specific jurisdiction), or on the defendant's general contacts with the forum state, provided those contacts are "continuous and systematic", (general jurisdiction). *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 473 n. 15, 105 S.Ct. 2174, 2181, 2182 n. 15, 85 L.Ed.2d 528 (1985) and *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8

and 9, 104 S.Ct. 1868, 1872 n. 8 and 9, 80 L.Ed.2d 404 (1984).

Exercise of jurisdiction over the non-resident defendant must also be consistent with "traditional notions of fair play and substantial justice" whether specific or general jurisdiction is invoked. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ "[G]eneral jurisdiction exists when there are sufficient contacts to justify an assertion of 'personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.'" *Covenant Bank for Savings v. Cohen,* 806 F.Supp. 52, 55 (D.N.J.1992), quoting *Hall, supra,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. "Mere minimum contacts" are not enough to establish general jurisdiction— "The nonresident's contacts to the forum must be continuous and substantial." *Provident National Bank v. California Federal Savings & Loan Association,* 819 F.2d 434, 437 (3d Cir.1987). Accord: *Hall, supra,* 466 U.S. at 415–16, 104 S.Ct. at 1872.

"The constitutionality of an exercise of specific jurisdiction turns on whether the defendant has 'purposefully directed' its activity toward the forum state." *Applied Biosystems, supra,* 772 F.Supp. at 1470. Due process requires the plaintiff to prove that the defendant "purposefully established 'minimum contacts'" with the forum state such that it could "reasonably anticipate being haled into court there", *Burger King, supra,* 471 U.S. at 474, 105 S.Ct. at 2183; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) and *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). "[I]f the sale of a product [in the forum state] ... arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States ...". *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567.

There must be evidence that the defendant "purposefully directed" its activities at residents of the forum state, "deliberately engaged" in "significant activities" in the state,

or created "continuing obligations" with state residents; and that the litigation stems from injuries or harm arising out of such activities. *Burger King, supra,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84 (Citations omitted.)

In cases involving sale or distribution of a product, the foreseeability requirement translates into a condition that the plaintiff demonstrate that it was reasonably foreseeable that the defendant's conduct could lead to its being haled into court in the forum state, not just a "mere likelihood" that the defendant's product would find its way there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Accord: *Max Daetwyler, supra,* 762 F.2d at 295.

In such cases, the courts have applied a stream of commerce theory to sustain jurisdiction over a non-resident manufacturer who made a deliberate decision to market its product in the forum state, then placed that product in the "stream of commerce". Proof of a "deliberate decision to market" can take the form of evidence that the manufacturer 1) designed the product for that state's market; 2) advertised in the forum state; 3) established consumer communication channels within the state; or 4) marketed its product through a distributor who served as the defendant's sales agent for that state. *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (plurality opinion). However, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.*

There is some question about whether the stream of commerce theory applies to non-tort actions. The Third Circuit expressed reservations about applying the theory in a patent infringement action, such as the case at bar, stating that the rationale for the doctrine, i.e. protecting state residents from unsafe products manufactured or sold by non-residents, did not apply to such cases. *Max Daetwyler, supra,* 762 F.2d at 298–99.

Once the plaintiff has made out a *prima facie* case of minimum contacts, "these con-

tacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction ... comport[s] with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, quoting *International Shoe, supra,* 326 U.S. at 320, 66 S.Ct. at 160. The burden shifts to the defendant to "present a compelling case that the presence of ... other considerations ... render jurisdiction unreasonable." *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3d Cir.1993). The considerations to be weighed include: 1) the burden litigation in the forum state would impose on the defendant; 2) the forum State's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining "convenient and effective relief"; 4) the "interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and 5) the "shared interest of the several States in furthering fundamental substantive social policies." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184, quoting *World–Wide Volkswagen, supra,* 444 U.S. at 292, 100 S.Ct. at 564.

Under this second tier analysis, the "[m]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2185, quoting *World–Wide Volkswagen, supra,* 444 U.S. at 292, 100 S.Ct. at 564. Application of this second tier analysis is discretionary with the court and appropriate only in certain cases. *Mellon Bank (East) PSFS, Natl. Assn. v. Farino, (Farino),* 960 F.2d 1217, 1222 (3d Cir. 1992), citing *Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184.

As stated, jurisdiction is a fact-specific inquiry. While this makes it difficult to make universally true generalizations, *Farino, supra,* 960 F.2d at 1224, in general the following are true.

Unilateral acts of the plaintiff or a third party are not sufficient in and of themselves to establish specific jurisdiction because they do not satisfy the purposeful availment requirement. *Burger King,* 471 U.S. at 475,

105 S.Ct. at 2183 and *Hall, supra,* 466 U.S. at 417, 104 S.Ct. at 1873. While a non-resident defendant's responses to requests or inquiries of other parties are considered in determining whether the constitutional requirements have been met, there must be additional evidence indicating that defendant purposefully took advantage of opportunities to act within the forum state. *Burger King, supra,* 471 U.S. at 474, 105 S.Ct. at 2183. See, e.g., *Mesalic v. Fiberfloat Corp.,* 897 F.2d 696 (3d Cir.1990).

■ "Random", "fortuitous", and "attenuated" contacts are likewise insufficient, by themselves, to satisfy due process. *Burger King, supra,* 471 U.S. at 475, 105 S.Ct. at 2183 (Citations omitted.) Intermittent sales of the defendant's product within the forum state, which do no more than create a "possibility of future contact" do not support general jurisdiction. Nor do occasional advertisements of the defendant's generic products within the forum state. *Max Daetwyler, supra,* 762 F.2d at 300. Advertising in a national publication is likewise insufficient by itself. *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 542 (3d Cir.1985). Advertising "will only provide a constitutionally sufficient basis for specific jurisdiction when ... [it] amounts to a 'sustained promotional campaign, directed to residents' of the forum state". *Applied Biosystems, supra,* 772 F.Supp. at 1471.

The mere existence of a contract between the non-resident defendant and the resident plaintiff does not, by itself, establish personal jurisdiction, but is one factor to be considered. *Burger King, supra,* 471 U.S. at 478, 105 S.Ct. at 2185. "The requisite contacts ... may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Farino, supra,* 960 F.2d at 1222, citing *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185. Accord: *Mesalic,* 897 F.2d at 701.

■ Actions performed through an agent or distributor do not shield the principal (in most cases a manufacturer or seller) from personal jurisdiction. *Grand Entertainment, supra,* at 479.

Jurisdiction can exist without a showing that the defendant has established a physical presence within the forum state. Thus, the plaintiff need not produce evidence that the defendant maintains offices or bank accounts, stores, supplies or equipment, etc., within the forum state. *Burger King, supra,* 471 U.S. at 476, 105 S.Ct. at 2184. See also: *North Penn, supra,* 897 F.2d at 690.

The percentage of the company's income derived from business within the forum state is not outcome determinative. It is not a defense against jurisdiction to cite the fact that only a small percentage of the company's income is derived from products sold or services provided within the forum state. *Id.* at 543.

### Effects theory

■ There exists a much more expansive "effects theory", under which specific jurisdiction may be found to exist in any state in which the effects of a tort allegedly committed by the defendant were felt. The theory has been recognized by the United States Supreme Court and by the Third Circuit in limited circumstances. Applicability of the theory to fact situations other than those presented in those prior cases is debatable.

*Horne v. Adolph Coors Co.,* 684 F.2d 255 (3d Cir.1982) is the most notable Third Circuit decision to apply the theory. In *Horne, supra,* the Third Circuit upheld the exercise of personal jurisdiction over a non-resident defendant who did not do business in the forum state, on the theory that defendant's alleged acts of infringement caused harm within the state. Horne held a patent for a device used to depressurize beverage cans. The district court dismissed the action on jurisdictional grounds, stating that Colorado-based Coors did not do business in New Jersey. Evidence that Coors knew of unauthorized product sales in New Jersey and had registered its name there to protect its trademark was held by the district to be insufficient to support a finding that it did business within the state. The Third Circuit reversed, finding that Coors had constructive notice of the patent and knew that the patent owner would be injured by unauthorized use of his patented device. The court further

found that the place where that injury occurred is the patent owner's place of business. *Id.* at 260.

The court reasoned that patent laws are the creation of federal law and that Congress could, therefore, without offending federalism concerns, "provide that the owner of federally protected intellectual property could always sue an infringer in his home state." The only limit on this power is the due process concern of fairness. But because both patents and trade secrets would be deemed to have fictional situs at the residence of their owners, the cause of action arose in the plaintiff's home state. Therefore, jurisdiction could be asserted under the effects test. *Id.* at 259, 260. See also: *Paolino v. Channel Home Centers*, 668 F.2d 721, 724–25 (3d Cir.1981). Cf. *Dollar Savings Bank v. First Security Bank of Utah*, 746 F.2d 208, 211 (3d Cir.1984) (loan by Pennsylvania bank insufficient to confer personal jurisdiction over Utah bank having no other contacts with Pennsylvania—Third Circuit rejected assertion that impact of default justified exercise of jurisdiction).

Other circuits have rejected the effects theory endorsed by *Horne, supra*, stating that it would allow plaintiffs to bring a patent or trademark infringement action in any state in which infringing goods are sold by the defendant either directly or indirectly by placing the goods in the stream of commerce. See, e.g., *Hollister, Inc. v. Coloplast A/S*, 16 U.S.P.Q.2d 1718 (N.D.Ill.1990) (1990 WL 141423) (infringing product sold in forum state by defendant's distributor, district court held that in the absence of forum contacts, it could not exercise jurisdiction over the manufacturer without violating principles of due process).

*Daetwyler, supra*, undercuts the Third Circuit's endorsement of the effects theory. Although ruling on a different issue, the court rejected "the proposition that tortious injury may occur wherever the infringing products are sold", stating that such a "far ranging theory" would, if carried to its logical extreme "result in the very 'national contacts' theory which we have unanimously rejected...." *Id.* at 299. The court also noted that the nature of the cause of action does not relieve a plaintiff of the burden of proving that the defendant has sufficient minimum contacts with the forum state and that it was foreseeable that he would be haled into court there. *Id.*

Subsequent to *Horne, supra*, the United States Supreme Court endorsed a limited version of the effects theory in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The Court upheld California's exercise of jurisdiction over a nonresident newspaper editor and reporter who were the subjects of a libel action filed by a California resident despite the absence of any ties between the defendants and the forum state, based on its finding that "California ... [was] the focal point both of the story and of the harm suffered". The Court stated that jurisdiction in California was proper because of the effects defendants' conduct had in California. The Court took care to distinguish *Calder* from cases involving "untargeted negligence", stating that the exercise of jurisdiction was justifiable by the nature of defendants' alleged conduct, being intentional and targeted specifically at California. See also: *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984) (Circulation of defendant's magazine in New Hampshire justified its exercise of personal jurisdiction over defendant based on findings that defendant "continuously and deliberately exploited the New Hampshire market" and could, therefore, "reasonably anticipate being haled into court there in a libel action based on the contents of its magazine").

In a 1987 decision, *Asahi, supra*, the Supreme Court rejected California's exercise of specific jurisdiction over a Japanese manufacturer of tire valve assemblies, on the grounds that the exercise of jurisdiction would violate due process because the manufacturer's product reached California via a circuitous route. Asahi sold its product to a Taiwanese company, which incorporated it into finished tires, which it then sold throughout the world. Some of the tires were sold in California. There was evidence that Asahi was aware that some of the tires containing its valve assemblies were sold in California, but had no other ties with Califor-

nia, did not do business there, and exercised no control over the distribution system which carried its valve assemblies into California. *Asahi, supra,* 480 U.S. at 107–08, 107 S.Ct. at 1029–30.

The Japanese manufacturer was haled into court in California when an injured motorist filed a product liability action in California state court for injuries sustained in an accident allegedly caused by a defect in the tire. The Taiwanese tire manufacturer filed a cross-complaint against Asahi, seeking indemnification. By the time the action reached the United States Supreme Court on Asahi's jurisdictional challenge, the only claim remaining was the manufacturer's claim for indemnification against Asahi. *Asahi, supra,* 480 U.S. at 106, 107 S.Ct. at 1029.

The Supreme Court rejected California's exercise of jurisdiction over Asahi on the grounds that: 1) requiring it to defend the action in foreign courts imposed a severe burden; 2) California's interest in trying an indemnification claim between a Taiwanese manufacturer and its Japanese supplier was slight; and 3) it was "not at all clear" that California law governed the issue of whether a Japanese corporation should indemnify a Taiwanese corporation for damages allegedly arising out of a sale made in Taiwan and a shipment of goods from Japan to Taiwan. *Asahi, supra,* 480 U.S. at 114–15, 107 S.Ct. at 1033.

In *Dakota, supra,* the Eighth Circuit found the cause of action alleged, trademark infringement, more closely akin to *Calder,* in which the Supreme Court upheld jurisdiction against a due process challenge, than to *Asahi,* in which the Supreme Court rejected jurisdiction on due process grounds. Stating that, like *Calder,* the case before it involved "intentional tortious wrongdoing"—the use of a trademark with knowledge that it constituted infringement, the Eighth Circuit upheld jurisdiction over a non-resident clothing manufacturer whom plaintiff alleged was infringing its trademark by clothing sales in North Dakota where the plaintiff's business was located. *Dakota, supra,* 946 F.2d at 1391.

Although *Calder, supra,* acknowledged the legitimacy of the effects test, it did so in language closely tied to the facts of that particular case. "It is still an open question whether, after *Calder,* due process concerns will permit the use of the effects test in every tort action. It is also an open question whether the 'effect' may be merely related to the plaintiff's cause of action or be the contact from which the plaintiff's cause of action arose." *Educational Testing Service v. Katzman, (ETS v. Katzman),* 631 F.Supp. 550, 563 (D.N.J.1986).

Application of the effects test in a copyright, trademark or patent infringement action raises issues which have yet to be resolved. There is uncertainty as to where the cause of action is deemed to arise: at the point of product origin, at the point of sale, at the principal place of business of the allegedly injured party or at some other location. If it is deemed to arise where the patent, copyright or trademark owner resides, as *Horne, supra,* suggests, the owner could then always sue in his home state so long as intentional acts are alleged. *ETS v. Katzman,* 631 F.Supp. at 563–64.

Further, the test cannot be based solely on effects if jurisdiction is to meet constitutional standards. *ETS v. Katzman,* 631 F.Supp. at 563. There must be an additional finding that the defendant purposefully availed himself of the forum state and could reasonably have foreseen that his action would cause harm in the forum state. *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567. See also: *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671 (1st Cir.1992) (Plaintiff failed to establish jurisdiction under stream-of commerce theory over non-resident manufacturer, because there was no evidence that defendant had purposefully availed itself of the forum state and should have reasonably anticipated being haled into court there) and *Narco Avionics, Inc. v. Sportsman's Market, Inc.,* 792 F.Supp. 398, 408 (E.D.Pa.1992). "The test is not knowledge of the ultimate destination of the product, but whether the manufacturer has purposefully engaged in forum activities so it can reasonably expect to be haled into court there ..." *Dalmau Rodriguez v. Hughes Aircraft Company,* 781 F.2d 9, 15 (1st Cir.1986). See also: *Covenant Bank, supra,* 806 F.Supp. at 55 ("single, unsolicited contact" with resident plaintiff not

sufficient to justify an assertion of personal jurisdiction).

There is a distinction between intentional acts aimed at a plaintiff who is located in the forum which cause foreseeable harm and intentional acts aimed at the forum itself. *Covenant Bank, supra*, 806 F.Supp. at 56 and *Narco Avionics, supra*. In the first instance, actions directed at the plaintiff "have only an unintended effect in the forum, such as economic damage." In the second, the defendant does the act "with 'the very purpose of having an effect' in the forum." *Covenant Bank, supra*, 806 F.Supp. at 56, quoting *Narco Avionics, supra*, 792 F.Supp. at 408.

There is also "a critical difference between an intentional act which has an effect in the forum and an act taken for the very purpose of having an effect there." *Narco Avionics, supra*, 792 F.Supp. at 408. "Classic ... examples would be mailing a letter bomb into the forum to a plaintiff with the intent that he be injured upon opening it, or propelling a projectile across the Delaware River from New Jersey into Pennsylvania for the purpose of hitting and injuring someone in this forum." *Id.*

### General jurisdiction over Methode

Amp asserts general jurisdiction over Methode on the basis of the following: Methode's distribution network includes distributors and sales agents█ who, although located outside the Commonwealth, regularly sell Methode products to Pennsylvania customers.[6] (J. McGinley deposition[7] pp. 28–29, 45–50, 56 and Record Document No: 46, exhibit "D"). Methode maintains a number of house accounts through which sells it to Pennsylvania customers, but does not pay a commission to a distributor or representative.

Methode's sales to Pennsylvania customers, while representing a small part of its total sales, have been substantial, and made on a regular basis█

This level of continuity negates Methode's contention that sales to Pennsylvania customers are merely sporadic or made more by chance than by any effort on its part. Cf. *Max Daetwyler, supra*, 762 F.2d at 298 (occasional sales of defendants' products by a distributor held insufficient to satisfy the "indirect shipment" language of the Pennsylvania long-arm statute even if deemed acts of "purposeful affiliation" by defendant sufficient to satisfy due process—which the court deemed "doubtful").

Methode's relationship with house account customers indicates that it has established ties with Pennsylvania customers and has, apparently, cultivated such ties over the years even if it may not have made a concerted effort to expand its Pennsylvania market due to stiff competition from Amp and other suppliers with a strong presence in the state.

The fact that the sales are routed through Methode's distributors and sales agents[8] does not shield it from jurisdiction. Methode ships its products to the distributor, knowing, in many cases, that they are going to a Pennsylvania customer since the customer has contacted Methode directly and requested the product. When Methode receives a purchase inquiry from a Pennsylvania customer, its practice is to refer the caller to the agent or distributor responsible for that region, who then gets a commission for the sale.[9] Cf. *Asahi Metal, supra*, 480 U.S. at 113, 107 S.Ct. at 1032 (Jurisdiction held not to exist with the court noting that the defendant "did not create, control, or employ the distribution system that brought its" product to the forum state).

---

6. This memorandum does not contain any specifics about Methode's business contacts, sales figures, etc., since the parties have stipulated that all such information was provided to plaintiff on the condition of confidentiality. All specifics are stated in an Appendix to this memorandum which is to be placed by the clerk in a sealed envelope bearing the notation: "Confidential—to be opened only on order of court."

7. James W. McGinley is an employee of Methode, and his January 8, 1993 deposition is reproduced at Record Document No. 46, exhibit "A".

8. See: J. McGinley deposition at pp. 45–52.

9. See: McGinley deposition at p. 50.

Methode's argument that its total Pennsylvania sales represent an insubstantial percentage of overall revenue [10] is also unavailing. The test is not whether Methode derives a certain percentage of overall profits from Pennsylvania, but whether it has substantial and significant ties with the Commonwealth through the sale of its product here. Although we concede that Methode's Pennsylvania sales are not a significant percentage of overall sales, it had sales here averaging at a substantial level. On the basis of the information provided by Methode, we can only conclude that the sales over the limited period provided are representative of Methode's sales within the Commonwealth. Had the sales figures for other months been more favorable to Methode's argument of insubstantial ties, they presumably would have been supplied to plaintiff and to the court.

The fact that Methode has no office in Pennsylvania and ships into the Commonwealth from distributors located outside the state [11] is also not controlling. Again, the test is not whether it has a demonstrated physical presence within the Commonwealth, but whether it knowingly ships products into Pennsylvania on a regular basis such that its ties to the Commonwealth are continuous and substantial.

### Specific jurisdiction over Methode

■ Plaintiff's allegations of specific jurisdiction are based on Methode's sale of one of the products alleged to infringe Amp's patent rights, to a customer located in the Eastern District of Pennsylvania. Plaintiff does not cite any instances of sales of alleged infringing products in this district but alleges only that infringing products were "marketed" here. Marketing is not the equivalent of selling a product, and absent proof of a sale of an infringing product in this district, we cannot conclude that plaintiff has established specific jurisdiction under the traditional line of analysis represented by *Max Daetwyler, supra,* and the cases which followed.

. If we were convinced that *Horne, supra,* remains sound law, we would find that specific jurisdiction does exist under the effects theory. However, as discussed above, *Horne, supra,* was abrogated by *Max Daetwyler, supra,* and the United States Supreme Court decisions which came later.

### Motion to transfer venue

■ Plaintiff alleges that venue is proper under 28 U.S.C. §§ 1391(b) and (c) or 1400(b). Section 1391(b) provides, in relevant part:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Section 1400(b) provides:

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400(b).

Under section 1391(c), for purposes of venue, a corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Having determined that personal jurisdiction over Methode is proper based on, *inter alia,* its sales to customers in the Middle District of Pennsylvania, we find that venue is proper in this district.

Methode also moves to transfer this action to the Northern District of Illinois pursuant to 28 U.S.C. 1404(a).[12] The party seeking a

---

**10.** See: J. McGinley deposition at pp. 52.

**11.** See: J. McGinley deposition at p. 51.

**12.** Section 1404(a) provides:

transfer bears the burden of proving that trying the action in another forum would be more convenient. The balance of relevant interests "must weigh heavily in favor of the transfer" to justify granting the motion. *PPG Industries, Inc. v. Systonetics, Inc.*, 614 F.Supp. 1161, 1163 (W.D.Pa.1985). "A party's choice of forum should not be lightly disturbed." *Id.* at 1164.

The court weighs four factors in deciding a motion to transfer venue: (1) the plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses; and (4) practical considerations which will make trial of a case easy, expeditious and inexpensive. *Id.* at 1163.

Here, transfer is not warranted on grounds of convenience. Methode's center of operations, and apparently most of its technical personnel who would testify in this matter, are located in Illinois. Amp's center of operations and its technical personnel familiar with the patents allegedly infringed by Methode are located in Harrisburg, Pennsylvania and the surrounding area. If this action is tried in Illinois, Amp will be inconvenienced to the extent it must send technical personnel to Illinois to testify at trial. If this action is tried in Pennsylvania, Methode will be inconvenienced to the same extent. All that granting Methode's motion would accomplish is shifting the inconvenience of transporting trial witnesses from Methode to Amp. That is not grounds for granting a transfer of venue. The plaintiff's choice of venue is entitled to deference. See: *PPG Industries, supra,* 614 F.Supp. at 1164 and *Leonardo Da Vinci's Horse, Inc. v. O'Brien,* 761 F.Supp. 1222, 1229–30 (E.D.Pa.1991).

The majority of the witnesses Methode calls to testify at trial to refute Amp's allegations of patent infringement will most likely be Methode technicians and employees. Methode should have little difficulty assuring that its own employees will testify at trial.

Where the action is tried will have little impact on pre-trial matters. Depositions will most probably be held where the deponents are found, necessitating travel by counsel on both sides at various times.

For all of these reasons, we find that Methode has not carried its burden of proof and will deny its motion to transfer this action to the Northern District of Illinois.

### Motion to add a party

▮ Methode has moved to dismiss Amp's patent infringement claim (Count I) for failure to join the owner of the patent as a necessary and indispensable party. Amp alleges in its amended complaint that it is the exclusive licensee of the patents Methode is alleged to have infringed. Methode argues that exclusive licensee status does not confer on Amp a right to sue as sole plaintiff because licensing rights do not operate as a transfer of ownership and ownership rights remain vested in the transferor. Methode argues that the law requires joinder of the patent owner to avoid, *inter alia,* the possibility that the alleged infringer will be subjected to multiple suits and judgments for the alleged infringement of a single patent.

Amp's motion to add a party was filed in response to these arguments, and is unopposed. While Amp maintains the correctness of its original position, that the law does not require joinder of the patent owner in an action filed by the exclusive licensee, it proposes joining the patent owner, Whitaker Corporation (Whitaker), to resolve the issue. Attached to its motion is a proposed second amended complaint.[13]

Rule 21 governs the joinder of additional parties.[14] In this circuit, "the standard for

---

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

13. See: Record Document No. 45, exhibit "A".

14. Rule 21 provides in relevant part:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.

Fed.R.Civ.P. 21.

adding or dropping parties under Rule 21" is the same as the standard for amending the pleadings under Rule 15. *Gibbs v. Titelman,* 369 F.Supp. 38, 53 n. 25 (E.D.Pa.1973), *rev'd on other grounds,* 502 F.2d 1107 (3d Cir.), *cert. denied,* 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). Grant or denial of a Rule 15(a) motion for leave to amend is subject to the sound discretion of the court. *Heyl & Patterson International, Inc. v. F.D. Rich Housing of the Virgin Islands,* 663 F.2d 419, 425 (3d Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). Rule 15(a) dictates that leave to amend "shall be freely given when justice so requires."[15]

Factors to be considered by the court in ruling on a request to amend include: whether the request is timely; whether granting it will prejudice opposing parties; whether the claim is compulsory; whether the pleader has acted in good faith; and whether it raises a meritorious claim. *Adams v. Gould, Inc.,* 739 F.2d 858, 864 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985) and *Perfect Plastics Industries v. Cars & Concepts,* 758 F.Supp. 1080, 1081 (W.D.Pa. 1991). The rules are generally liberally construed in favor of allowing the proposed amendment, consistent with the goal of ensuring that all related claims are litigated in a single action. See generally: *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962).

Here, the relevant facts warrant granting the motion. Not only is this action still in the discovery stage, discovery has, thus far, been limited to issues of venue and jurisdiction and has, therefore, presumably centered on the extent and nature of defendant's contacts with this district. Permitting plaintiff to join Whitaker will not delay the case or prejudice the defendant. See generally: *Perfect Plastics, supra,* 758 F.Supp. at 1081 (amendment to allow compulsory counterclaim granted although delay of more than one and one-half years). Allowing the proposed amendment will, in fact, remedy defendant's contention that the case should not be permitted to go forward without the joinder of the patent owner at the risk of subjecting defendant to multiple claims on the alleged infringement of the same patent.

### Motion to dismiss Count I for failure to join a necessary party

Granting the motion to add Whitaker as a party renders defendant's motion to dismiss Count I for failure to join a necessary party moot. (See: Record Document No. 44)

### Motion to compel discovery

Plaintiff's motion to compel the production of documents relevant to Methode's contacts with Pennsylvania and with this district will be denied as moot.

### ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. Defendant's motion to dismiss or transfer venue (Record Document No. 3) is denied.

2. Defendant's motion to dismiss Count I of plaintiff's complaint for patent infringement (Record Document No. 2) is denied.

3. Plaintiff's motion to compel discovery on the question of venue (Record Document No. 43) is denied as moot.

4. Plaintiff's motion to add Whitaker Corporation as a party plaintiff (Record Document No. 45) is granted.

5. Plaintiff's second amended complaint, attached as Exhibit "A" to Record Document No. 45, is deemed filed this date and shall be so docketed by the Clerk.

6. The court will issue a separate revised scheduling order.

7. The **APPENDIX** to the memorandum is **CONFIDENTIAL** and may not be furnished to any person, other than counsel of

---

15. Rule 15(a) provides in relevant part:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Fed.R.Civ.P. 15(a).

record without an order of court. The clerk is directed to place the original and all file copies of the **APPENDIX** in a sealed envelope marked "Confidential—to be opened only on order of court."